*In re* LAURA PRYSE HICKEY, *Petitioner.*

No. 17,224.

SYLLABUS BY THE COURT.

HABEAS CORPUS—*Custody of Minor Child.* In determining the custody of a child his welfare is the paramount consideration. Even parental love must yield to the claims of another, if after due judicial investigation, it is found that the highest good of the child requires it.

Appeal from Franklin district court. Opinion filed October 7, 1911. Affirmed.

*John C. Quin,* and *F. M. Harris,* for the petitioner. *W. J. Costigan,* for the respondent.

The opinion of the court was delivered by

BENSON, J.: The petitioner seeks to recover the custody of her daughter, Edith Pryse, a child now about seven years old. The petitioner when twenty-one years of age was married to Fred Pryse, who deserted her and their two children, Edith and an older girl, at Mena, Ark., in May, 1906, leaving them without means of support. The two children were taken by their mother to a children's home in Kansas City. Edith was taken from this home by a benevolent woman of Ottawa, and in November, 1906, with the consent of the home authorities, was placed in the custody of Mrs.

Mary Thayer, the respondent, the mother being very sick at that time. Mrs. Thayer was anxious to adopt the child, but no authority being found for such adoption, the matter was dropped, but she remained with Mrs. Thayer. This proceeding was commenced in the name of Laura Pryse, as petitioner, who had previously asked for the custody of the child, which request was refused. The hearing began in April, 1909. After testifying in the matter the petitioner asked for a continuance, which was granted. When the hearing was resumed in January, 1910, the following facts appeared: The petitioner, without having been divorced from her husband, was married to Frank Hickey in Missouri in March, 1907. Hickey was then a married man separated from his wife, but not divorced. He secured a divorce from his wife in June, 1907, at Erie, in this state, and the petitioner was divorced from her husband, Pryse, in May, 1909, in Arkansas. While this proceeding was pending, in June, 1909, the petitioner and Hickey were remarried in Oklahoma. Hickey had one child, a boy, by his first wife, born in 1906, after their separation. He has never seen this child and has never given him any care or support, claiming inability to do so. Since the year 1906 he has worked in various occupations in different places. At the time of the final hearing in this matter he was living with his present wife, the petitioner, in two upper rooms in Chanute, where he was employed in a cement factory, earning $60 to $70 per month. He is about thirty years of age. The petitioner's other daughter, who is about eight years of age, now lives with her mother.

Soon after her separation from her first husband the petitioner wrote letters to a married man, claiming an engagement of marriage and asking for money because of his failure to marry her. This was explained by her testimony that she supposed the man to be single. Affidavits of citizens of her former home in Arkansas certify to her good reputation and proper conduct.

The family of the respondent consists of the husband and wife and a son and daughter. Mrs. Thayer's aged parents also live with them. She is about sixty-three years of age, and with her husband has lived in Franklin county over thirty years. They own a farm of 200 acres upon which they reside. They are highly respected citizens, and their home appears to be suitable and proper for this child, to whom they have become greatly attached.

After a full hearing the district court concluded to leave the child in the custody of Mrs. Thayer. We are asked to reverse this conclusion and give the custody to the mother. If sympathy for the mother in her misfortunes and in her natural desire to have the companionship and care of her little girl would control, the petition would be granted; but a still more sacred consideration must direct our judgment—the welfare of the child is the paramount consideration. (*Chapsky v. Wood*, 26 Kan. 650; *In re Bullen, Petitioner, &c.,* 28 Kan. 781; *In re Beckwith, Petitioner,* 43 Kan. 159, 23 Pac. 164.) To this even parental love must yield; but before so distressing a result is permitted, the court must be satisfied that the good of the child requires it. The mother excuses her conduct in marrying without being divorced from her husband by testifying that from information upon which she relied she believed him to be dead. We are not disposed to be censorious in judgment concerning the past irregular conduct of the petitioner or of her present husband. It is true that they might give this child advantages equal to those which, it seems reasonable to suppose, will be afforded in the home of the respondent, and in addition the sweet privilege of a mother's companionship, but, without commenting further upon the facts presented in this record, we do not find satisfactory assurance of such a result.

We believe that the love of the respondent, coupled as it is with reasonably sufficient facilities to afford

practical expression, will continue to surround this child with wholesome influences in a good home, and result in her highest good. In the time of her mother's greatest distress, she was kindly cared for by the respondent, into whose heart has come that love for a helpless child which is not the least among the glories of womanhood. The district judge, who has looked into the faces of all these parties and become apprised of all the conditions which can be discovered by patient judicial examination, concluded to leave the child with the respondent, and this court, after carefully examining the record and evidence, is satisfied with that conclusion.

The judgment is affirmed.