## IN RE THOMPSON.

### (No. 5,977.)

### (Submitted November 8, 1926. Decided November 29, 1926.)

### [251 Pac. 163.]

*Habeas Corpus — Appeal — Parent and Child — Custody of Child—Legitimacy—Presumption.*

Appeal and Error—Appeal Lies, When.
> 1. An appeal is authorized by statute only and unless a judgment or order falls fairly within the enumeration of those made appealable by the statute, an appeal does not lie therefrom.

Supreme Court—Language in Opinion to be Read in Connection With Facts of Case.
> 2. Language used in an opinion by the supreme court on any given question must be limited in its application to the facts considered therein.

*Habeas Corpus*—Custody of Minor—Judgment Appealable.
> 3. A proceeding in *habeas corpus,* the object of which is to determine the right to the custody of a minor, is a special proceeding of a civil nature to enforce private rights; the disposition made of it by the court is a judgment from which an appeal may be taken under section 9731, Revised Codes of 1921.

Same—Minors—Custody—Competency of Parent—Who may Question.
> 4. *Quaere:* May one who has no legal right to the custody of a child question the competency of a parent to care for it?

Parent and Child—Child Born in Wedlock Presumed Legitimate.
> 5. A child born in wedlock is presumed to be legitimate even though it was conceived before the marriage of the mother; such presumption cannot be overcome by circumstances which only create doubt or suspicion, but to overcome it the evidence must be strong, distinct and wholly satisfactory.

Same—Custody of Child—*Habeas Corpus*—Fitness of Parents—Extent of Inquiry by Court.
> 6. Under section 5834, Revised Codes of 1921, the father and mother of a legitimate unmarried child are equally entitled to its custody, and where a father, deeming the mother unfit to have charge of a child, had placed it in the care of his sister and her husband, the latter were his agents empowered to resist attempts of the mother to regain its custody by *habeas corpus* and the court could properly permit an investigation into facts which would have been available to the father if attempt had been made to take the child from him.

---

1. See 2 R. C. L. 27.
3. See 12 R. C. L. 1257.
5. See 3 R. C. L. 730.

[77 Mont. 466.]

Same—Custody of Minor—Welfare of Child Paramount Consideration.
7. In awarding the custody of a minor, the welfare of the child
is to be regarded more than the technical rights of the parents,
and the decision of the district judge ought not to be disturbed
except upon a clear showing of abuse of discretion lodged in him.

---

[1] Appeal and Error, 3 C. J., sec. 29, p. 316, n. 43.
[2, 3] Appeal and Error, 3 C. J., sec. 382, p. 542, n. 75; sec. 401,
p. 558, n. 4. Courts, 15 C. J., sec. 376, p. 970, n. 30. Habeas Corpus,
29 C. J., sec. 1, p. 8, n. 15, 18.
[4] Appeal and Error, 4 C. J., sec. 2541, p. 699, n. 36.
[5] Bastards, 7 C. J., sec. 6, p. 940, n. 31; p. 941, n. 32; sec. 15,
p. 945, n. 79; p. 946, n. 84.
[6] Parent and Child, 29 Cyc., p, 1589, n. 51; p. 1594, n. 83; p. 1597,
n. 3.
[7] Appeal and Error, 4 C. J., sec. 2541, p. 699, n. 36. Habeas
Corpus, 29 C. J., sec. 101, p. 109, n. 10; sec. 227, p. 194, n. 48. Parent
and Child, 29 Cyc., p. 1590, n. 53.

*Appeal from District Court, Yellowstone County; O. F. Goddard, Judge.*

APPLICATION by Maggie May Thompson for a writ of *habeas corpus* on behalf of James Reed Thompson, her minor child, which was opposed by Thomas Thompson. Judgment was entered denying the application and petitioner appeals. Affirmed.

*Mr. F. Reed McBride* and *Mr. John A. Shelton,* for Petitioner, submitted a brief; *Mr. Shelton* argued the cause orally.

*Mr. John G. Skinner,* for Respondents, submitted a brief.

MR. JUSTICE STARK delivered the opinion of the court.

Maggie May Thompson filed in this court a petition reciting that she was the mother of James Reed Thompson, who was born on March 2, 1918; that her husband, Thomas Thompson, about the month of July, 1923, by falsehood and deceit obtained possession of her said son at Vancouver, B. C., and without her consent transported him to Red Lodge, Montana, and placed him in the care and custody of W. A. Bruckert and Ella Bruckert, his wife, the latter being a sister of her said husband, and that the child has remained with the Bruckerts at all times since; that in July, 1924, she made a trip from Portland,

Oregon, where she resided, to Red Lodge, "hoping thereby to see and obtain her child," but did not succeed in accomplishing either purpose, and, being without funds to remain and take legal proceedings, she returned to Portland; that in November, 1925, she demanded possession of her said child from the Bruckerts, which demand was refused, and she prayed that a writ of *habeas corpus* issue out of this court directed to the Bruckerts, commanding them to have the body of the child at a time and place specified, together with a showing of their cause for his detention, in order that the cause of his detention might be inquired into. A writ was issued as prayed for and was made returnable before Hon. O. F. Goddard, one of the judges of the district court of the thirteenth judicial district of this state, at Billings, on December 17, 1925, at 10 o'clock A. M.

To this writ the Bruckerts in due time made a return, which set forth that said child was placed in their care and custody by his father, Thomas Thompson, on or about September 2, 1923, and had been in their custody and control and supported and cared for by them at all times since. The return further set forth that said child had been wilfully abandoned by his mother, the petitioner, prior to and at all times since September 2, 1923, that at the date of the issuance of the writ, and for some time prior thereto, he was still an abandoned child, within the provisions of section 5859, Revised Codes of 1921, that said petitioner was not a proper person to have his care and custody for reasons set out in detail, and that she was not financially able to care for, educate and maintain him; that she and her husband were living separate and apart from each other; and that the husband had refused to have anything further to do with the petitioner. Issue was joined upon the matter of abandonment, unfitness and inability to support, as set out in the return.

The court heard the evidence of the respective parties and subsequently made findings and a decision to the effect that the said James Reed Thompson had been abandoned by the

petitioner, that she was not a fit and proper person to have his custody, and that it was for the best interests of the child that he remain in the custody of the Bruckerts until the further order of the court. Judgment was rendered in accordance with what is above recited, and the petitioner has appealed therefrom to this court.

At the outset, we are met with a motion to dismiss on the [1] ground that the judgment attempted to be appealed from is not an appealable one.

An appeal is authorized by statute only, and, unless the judgment appealed from falls fairly within the enumeration of appealable orders or judgments made by the statute, the appeal does not lie. (*Estate of Tuohy,* 23 Mont. 305, 58 Pac. 722; *Taintor* v. *St. John,* 50 Mont. 358, 146 Pac. 939.)

Section 9731, Revised Codes of 1921, provides: "An appeal [2, 3] may be taken to the supreme court from a district court in the following cases: (1) From a final judgment entered in an action or special proceeding commenced in a district court, or brought into district court from another court."

In *State ex rel. Jackson* v. *Kennie,* 24 Mont. 45, 60 Pac. 589, which was a *habeas corpus* proceeding wherein the relator was confined in jail for failure to give a bond to keep the peace, under an order which had been made by the respondent justice of the peace, sought to be released from restraint, and had appealed from an order of the district court denying the relief prayed for, it was held that such an appeal would not lie because no provision therefor was contained in the Penal Code, and the attempted appeal was dismissed. *In re Pyle,* 72 Mont. 494, 234 Pac. 254, was a proceeding in *habeas corpus,* in which the petitioner also endeavored to obtain his release from a commitment after conviction in a criminal proceeding and was heard before Mr. Justice Galen. The opinion therein states that the "doctrine of *res adjudicata* has no application in *habeas corpus* proceedings" and that no appeal is permitted from orders made therein.

The question now presented was not and could not have been before the court in either of the two cases above referred to, and whatever was said in them must be limited in its application to the facts then and there being considered. (*Martien* v. *Porter*, 68 Mont. 450, 219 Pac. 817.)

In *State ex rel. Brandegee* v. *Clements*, 52 Mont. 57, 155 Pac. 271, it was held that *habeas corpus* seeking the release of an incompetent from the custody of her guardian on the ground that she was competent and was being illegally restrained of her liberty is a proceeding civil in its nature. This holding was based, in part, upon the authority of *State ex rel. Newell* v. *Newell*, 13 Mont. 302, 34 Pac. 28, which was an action like the present one to determine the right of the contending parties to the custody of minor children, and it was held to be a special proceeding so far civil in its nature that the petitioner therein was a plaintiff, and that the disposition of the matter was a judgment, within the meaning of section 495 of the Code of Civil Procedure, Compiled Statutes of 1887, allowing costs to a plaintiff upon a judgment in his favor. In *State ex rel. Giroux* v. *Giroux*, 15 Mont. 137, 38 Pac. 464, this court entertained an appeal from a judgment of the district court dismissing an application for a writ of *habeas corpus,* instituted for the purpose of determining the right to the custody of the minor children of the parties and reversed the judgment.

In the light of these authorities, together with others hereafter referred to, we think there can be no doubt but that, under our statute and decisions, a proceeding in *habeas corpus,* the object of which is to determine the right to the custody of a minor, is essentially a special proceeding of a civil nature to enforce private rights, that the petitioner for the writ must be considered the plaintiff and the adverse party the defendant, and that the disposition thereof made by the court is a judgment.

Speaking of the effect of such a determination with respect
to the custody and control of infants, in 2 Freeman on Judg-
ments, fifth edition, page 1764, section 829, the author says: "If
the adjudication was by a court having jurisdiction, it is *res
adjudicata* as to the rights of the parties on the facts as they
then existed. This rule is most frequently applied with respect
to *habeas corpus* proceedings to determine the rights of custody,
which must be distinguished in this respect from *habeas corpus*
proceedings by one imprisoned, to secure his freedom, the
question in the former being, not whether the infant is re-
strained of its liberty, but which of the contending parties is
entitled to its custody. The decision on a former writ is con-
clusive in a subsequent application, unless some new fact has
occurred which has altered the state of the case or the relative
claims of the parents or other contestants to the custody of the
child in some material respect. The adjudication is conclusive,
so far as the right of custody is concerned, as to every matter
or fact which might have been urged for or against that right."
The same principle is handed down in Church on Habeas
Corpus, second edition, page 575, section 287.

In *Jamison* v. *Gilbert*, 38 Okl. 751, 47 L. R. A. (n. s.) 1133,
135 Pac. 342, a question like the one now under consideration
was involved. The court, after reviewing the authorities and
pointing out the distinction between proceedings in *habeas
corpus* brought by a person to obtain his release from restraint
and such an action prosecuted to determine the custody of
children, recognized the rule stated in the text-books above
referred to and concluded its decision on that branch of the
case as follows: "It follows as a result of such a rule that,
since the judgment rendered upon the facts existing at the
time of the trial is binding and conclusive and bars a subse-
quent proceeding by the parties thereto upon the same facts,
the order made thereon is a final order, so far as the facts
existing at the time of the institution of the case and trial are

involved; and such an order is final, within the meaning of the statutes, for the purpose of review."

The right to an appeal in a situation like the one here presented was before the supreme court of Idaho, in *Jain* v. *Priest*, 30 Idaho, 273, 164 Pac. 364, and, in disposing of it, that court said in part: "Section 4807, Revised Codes, as amended by Chapter 111, Session Laws 1911, provides that an appeal may be taken to the supreme court from a final judgment of the district court in an action or special proceeding commenced in the court in which the same is rendered. This relates only to civil actions or special proceedings of a civil nature. A proceeding in *habeas corpus* to determine the right to the custody of a child is a proceeding of a civil nature. * * * The judgment or order of the court is a final judgment in the sense that by it the parties to the action are concluded as to the particular issues presented. * * * We are of the opinion that the judgment of the court in such a proceeding is a final judgment, within the purview of our statute relating to appeals. We conclude that an appeal lies from the judgment of the district court in such a proceeding."

The authorities upon this point are numerous and practically all in accord with the rules above announced. (*Bleakley* v. *Smart*, 74 Kan. 476, 11 Ann. Cas. 125, 87 Pac. 76; *McKercher* v. *Green*, 13 Colo. App. 270, 58 Pac. 406; *People* v. *Court of Appeals*, 27 Colo. 405, 51 L. R. A. 105, 61 Pac. 592; *Flynn* v. *Casper*, 26 Colo. App. 344, 144 Pac. 1137; *Henson* v. *Walts*, 40 Ind. 170; 12 R. C. L., sec. 75, p. 1257; *In re Holt*, 34 Cal. App. 290, 167 Pac. 184; *In re Frazier*, 50 Cal. App. 45, 194 Pac. 510.)

We conclude that an appeal lies from a judgment like the one in question, and therefore the motion to dismiss the appeal is overruled.

One of the main contentions of the appellant and the one which, in reality, is decisive of the merits of the appeal is raised by counsel's second specification of error, which is that

the court erred "in holding and deciding that the relative fitness of the petitioner and respondents to care for the said child was a matter proper to be considered, since respondents were without any right to such custody." Counsel argue and [4] cite authorities to sustain their position that one who has no legal right to the custody of a child cannot question the competency of a parent to care for it.

Assuming, but not deciding, that such is the law, we are obliged to consider all of the circumstances and conditions under which the child came into the custody of the Bruckerts, in order to determine whether such an inquiry was justified and whether the finding that petitioner is not a proper person to have the custody of the child and that it is for the best interests of the child to remain in the custody of the Bruckerts until the further order of the court was sustained by the evidence, if the inquiry was warranted.

Concerning the paternity of the child, the husband, Thomas Thompson, testified that he had known the petitioner for a period of about one year prior to his marriage to her on October 4, 1917; that he had arranged for her to come to his ranch and act as his housekeeper and, pursuant to such arrangement, first met her on the train and took her to his place; that he had sexual intercourse with her prior to their marriage, and that she became pregnant and so informed him; that this subject was discussed between them, and because of that condition petitioner wanted him to marry her, and he said "All right," and that this was the principal reason for their marriage; that the child was born on March 2, 1918; and that he was the father of the child. On the other hand petitioner testified that she first became acquainted with Thompson about August 20, 1917, and that they were married on October 4, 1917; that a short while after she met Thompson and prior to their marriage, they began to have sexual intercourse and continued to do so until December. She further testified that during the first week of her acquaintance with Thompson she

told him that she was pregnant and gave him the name of the putative father, who was a man with whom Thompson was acquainted; that this matter was discussed with and was thoroughly understood by Thompson. In answer to the question on cross-examination: "Is it not a fact that your condition at that time was the principal inducement for the marriage?" she replied, "Well, I did marry the man to save the child's name a bit on account of my mother. And he did not claim the child at all only by name to me."

Having been born in wedlock, it is presumed that the child [5] was legitimate (sec. 5830, Rev. Codes 1921), and this presumption prevails despite the fact that the child was conceived before the marriage of the mother (*Baker* v. *Baker*, 13 Cal. 87; *Grant* v. *Stimpson*, 79 Conn. 617, 66 Atl. 166; *Wallace* v. *Wallace*, 137 Iowa, 37, 126 Am. St. Rep. 253, 15 Ann. Cas. 761, 14 L. R. A. (n. s.). 544, 114 N. W. 527; *Dennison* v. *Page*, 29 Pa. 420, 72 Am. Dec. 644). While this presumption could be disputed by the wife (sec. 5832) and illegitimacy proved like any other fact, it is the rule that it cannot be overcome by circumstances which only create doubt or suspicion, and that the evidence against legitimacy ought to be strong, distinct, and wholly satisfactory (1 Schouler on Marriage, Divorce and Separation, 6th ed., p. 724).

The testimony as to the paternity of the child being in conflict, a finding in favor of its legitimacy was fully warranted and could not be disturbed by this court on appeal. Under such a finding, the declaration of section 5837 that "the mother of an illegitimate unmarried minor is entitled to its custody, services, and earnings" would have no application.

Concerning the circumstances under which the child was [6] placed in the custody of the Bruckerts, the father testified that he and the petitioner were living in Vancouver, British Columbia; that just before taking the child away from the petitioner he had been working away from home and, when he returned, found his wife living with another man; "she told me

it was off with me and to take my son and beat it"; that he followed this suggestion and brought the child to Mrs. Bruckert, who is his sister, and left it with her and her husband "to find a home for him where he could be taken care of"; and that it was his desire and wish that the child should remain in the custody of the Bruckerts. In this connection, as her version of the transaction, the petitioner testified that in July, 1923, Thompson took the child from her with an understanding that he would go to Blaine, Washington, and return him the next day; that when he failed to return she began to make efforts to get the child back, but had not been successful in so doing.

Under the provisions of section 5834, "the father and mother of a legitimate unmarried child are equally entitled to its custody." At the time the father placed the child with the Bruckerts, in order that he might have a home and be properly cared for, the father's custody of the child was legal. His arrangement with the Bruckerts for the care and maintenance of his son was authorized, and their custody and control of the child under such arrangement were lawful. They became, in fact, the agents of the father in caring for the child. When the petitioner made an attempt to take the child from them, as such agents, they were warranted in resisting it, and it was competent for the court to permit an investigation into any facts which would have been available to the father if the attempt had been made to take the child from him, since, under such circumstances, the contest was in reality one between the petitioner and the father.

The duty of deciding the controversy over the rights to the [7] custody of this child was a delicate one, lodged with the district judge who heard the matter, and his decision ought not to be disturbed except upon a clear showing of an abuse of discretion. (*Jewett* v. *Jewett*, 73 Mont. 591, 237 Pac. 702.)

The rule which obtains in most of the courts of this country is that, in awarding the custody of a minor, the welfare of the child is to be regarded more than the technical rights of the

parents. This rule has been expressly adopted by legislative enactment in this state by section 5878, Revised Codes of 1921, which declares: "In awarding the custody of a minor, or in appointing a general guardian, the court or officer is to be guided by the following considerations: (1) By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare. * * * "

We have read and considered all the testimony introduced at the hearing of this matter. A further recital of it would not advantage anybody; and we shall content ourselves with the statement that, in our opinion, it was fully sufficient to justify the determination of the judge who heard it to the effect that it is for the best interests of the child to allow him to remain in his present situation until the court shall make a further order relative thereto.

This conclusion makes it unnecessary to determine whether the evidence showed an abandonment of the child by the petitioner, and likewise makes it unnecessary to discuss counsel's other specifications of error.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway, Associate Justices Galen and Matthews and Henry G. Rodgers, District Judge, sitting in place of Mr. Justice Holloway, absent on account of illness, concur.