Ex Parte BOURQUIN.  BOURQUIN, Appellant, *v.* BOUR-
QUIN, Respondent.

(No. 6,718.)

(Submitted June 28, 1930.  Decided July 19, 1930.)

[290 Pac. 250.]

*Mr. Justin J. Bourquin* and *Mr. H. Lowndes Maury,* for Appellant, submitted a brief; *Mr. Maury* argued the cause orally.

120

*Mr. J. Frank Sullivan,* for Respondent.

Opinion: PER CURIAM.

This is an appeal from a final judgment of the Second Judicial District, awarding the custody and control of Peggy Mitchell Bourquin, six years of age, to Mrs. Hazel Bourquin, the mother.

Briefly, the facts surrounding the controversy are these: George Bourquin, son of respondent, and Mrs. Hazel Bourquin, petitioner, the mother of the infant, were married in 1921.

There were born as issue of the marriage Peggy Mitchell and George, Jr. The parties lived together as husband and wife until December, 1928, when petitioner upon her application was granted a divorce. At the same time an agreement was entered into under the terms of which the custody of George, Jr., was given petitioner and the custody of Peggy was given temporarily to the father, with provision regarding the right of visitation of either parent of the child retained in the custody of the other. Soon after the divorce was granted, petitioner, with George, Jr., left Butte and took up her residence in Washington, D. C., where she remained until shortly before the death of George Bourquin, which occurred March 23, 1930. After his divorce and until his death, George Bourquin, with Peggy, lived with his mother, respondent herein. Prior to his death and during his fatal illness George Bourquin requested respondent to retain the custody of Peggy. Shortly after George Bourquin's death petitioner demanded custody of Peggy, which was refused, whereupon she filed her petition for a writ of habeas corpus, which resulted in judgment in her favor, from which respondent has appealed.

Upon the hearing much testimony was introduced by both parties, from which it appears that petitioner is possessed of money and property of the value of $2,100, that she is by training a stenographer and dry-goods clerk, and that she has present employment as housekeeper for her sister and brother-in-law, who have no children, at a wage of $60 per month, together with the keep of her two children. It further appears that Mrs. Mary Bourquin owns her home in Butte, where she has resided for many years; that she is possessed of adequate finances to provide for herself and Peggy in comfort; that Peggy was raised in her home, and that respondent has had the custody and control of the infant since the divorce; that the child has been well provided and cared for; that respondent has devoted tender solicitude for her, and the two have become greatly attached.

The order granting the writ recites: "That the said Hazel Bourquin is a fit and proper person, from the standpoint

of morals, education and refinement, to have the care and custody of her said minor daughter, Peggy Mitchell Bourquin, and is able to support and educate the said Peggy Mitchell Bourquin, and that the said Mrs. Mary Bourquin, though suitable in every way herself to have the custody of said child, nevertheless is unlawfully withholding her custody from said Hazel Bourquin.''

This is one of that unfortunate class of cases which is painful and distressing to the parties and judges alike, and presents the most perplexing questions which courts are called upon to decide, and, whatever conclusion we reach there will be the consciousness of the indescribable heartaches, misery and suffering which it will bring to the losing party.

At the outset we are confronted with the presumption that the decision of the lower court was correct. ''The duty of deciding the controversy over the rights to the custody of this child was a delicate one, lodged with the district judge who heard the matter, and his decision ought not to be disturbed except upon a clear showing of an abuse of discretion.'' (*In re Thompson*, 77 Mont. 466, 251 Pac. 163, 166; *Jewett* v. *Jewett*, 73 Mont. 591, 237 Pac. 702.)

Section 5834, Rev. Codes 1921, provides: ''The father and mother of a legitimate unmarried minor child are equally entitled to its custody, services and earnings. If either parent be dead, or unable, or refuse to take the custody, or has abandoned his or her family, the other is entitled to its custody, services, and earnings.'' This statute gives the parents the care and custody of their minor children, yet the right is not absolute. It seems to be the settled doctrine of the courts of this country, in proceedings affecting the custody of an infant child, that the paramount and controlling question by which the court must be guided is the welfare of the child. (*In re Hickey*, 85 Kan. 556, 118 Pac. 56, and note, 41 L. R. A. (n. s.) 564; *Sherry* v. *Doyle*, 68 Utah, 74, 48 A. L. R. 131, and note, 249 Pac. 250.) This rule has been expressly adopted by legislative enactment in this state by section 5878, Revised Codes 1921, which declares: ''In award-

ing the custody of a minor, or in appointing a general guardian, the court or officer is to be guided by the following considerations: 1. By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare. * * * '' But this does not mean which of the parties can surround the child with greater advantages and comforts or which of the two will be able to give or bequeath the greater amount of money or property. (46 C. J. 1246.) It would be going far beyond the scope and intent of the law, to such lengths as to destroy its character, to establish such a standard.

The supreme court of Arkansas, in dealing with a somewhat similar case, had this to say: "In *Verser* v. *Ford,* 37 Ark. 30, this court through Judge Eakin said: 'Any system of jurisprudence which would enable the courts in their discretion and with a view solely to the child's best interests to take from him that right, and interfere with those duties, would be intolerably tyrannical, as well as utopian.' Even as between the father and the mother, the custody in the father is generally allowed unless the child, on account of tender years, or being a female, imperatively requires for its well being that attention which a mother's love and care alone can supply. But as between the parent and grandparent, or anyone else, the law prefers the former unless the parent is incompetent or unfit because of his or her poverty or depravity to provide the physical comforts and moral training essential to the life and well being of the child. It must be an exceptional case where the evidence shows such lack of financial ability, or such delinquencies in character on the part of the father, as to imperil the present and future welfare of his child, before a court of chancery will deprive him of the duty and the privilege of maintaining and educating his child, and of the pleasure of its companionship." (*Baker* v. *Durham,* 95 Ark. 355, 129 S. W. 789, 790; *State* v. *Hitman,* 164 Minn. 373, 205 N. W. 267; *Mead* v. *Worel,* 113 Wash. 504, 194 Pac. 809.)

Manifestly, the expression "welfare of the child" was never intended to penalize a parent because he may not be financially able to provide his child with the comforts and advantages which more fortunate parents may provide for their children. All the law requires is that the parent be honest and respectable, with disposition and capacity to maintain and educate his child. We conceive the law to be that it is our duty to award the infant child to the mother, unless she has by her conduct forfeited that right, that is, that it be made to appear that the mother is unfit or incompetent to take charge of it, or unless the welfare of the child for some special or extraordinary reason demands a different disposition.

Here it is conceded by respondent, and the court so found, that petitioner is morally fit to have the care and custody of the child; the court also found that she is able to support and educate her. In effect, the learned trial judge, the trier of the facts, determined that petitioner has not forfeited her right to the custody of her minor daughter, and that no special or extraordinary reasons exist for making a different disposition of her. This being true, why should the mother not have the custody? Certainly not the law of nature nor the laws of the state justify denying her this right. We think the record clearly discloses that the only obstacle is the tender and loving impulses of the grandmother, and these have been greatly accentuated by the untimely death of her son. We think it apparent that respondent could and would furnish the little girl with greater advantages, but this is not sufficient to deprive the mother of her child. History records, and common experience has demonstrated, that ofttimes the facing of the hardships of life in humble surroundings is a circumstance which aids in the development of true womanhood and manhood. "Nor are we prepared to say that it is always to the interest of the child to have it reared by fond grandparents past the meridian of life. The lives of many girls and boys have been blighted by the unrestrained indulgences of grandparents." (*State* v. *Ellison*, 271 Mo. 416, 196 S. W. 1140, 1141.)

Furthermore, when we consider the welfare of Peggy, we cannot overlook the advantage that will come to her from being returned to the companionship of her baby brother. The two children should be kept together, if possible, and have the benefit of that close association which is vastly more important in the development of character and an unselfish disposition than greater material advantages and comfort.

The return of respondent recites: "That, of course, respondent does not intend to withhold all means from the support of Peggy, if custody be denied her of Peggy (respondent will not see Peggy in need unsatisfied in any event) yet respondent believes that if she supplies the funds for Peggy's support, there will be no chance of the funds being diverted from her purpose or from Peggy's benefit if Peggy is in the custody of respondent while the expenditures are made." It thus appears that respondent will assist in the support of Peggy, and no doubt this was given consideration by the trial court in reaching its conclusion.

A most careful consideration of the facts and an exhaustive search of the authorities has convinced us that the findings of the court are amply sustained by the evidence, that the court did not abuse its discretion, and the judgment must be, and is, affirmed.

Let remittitur issue forthwith.

All the Justices concurring.