In the Matter of declaring EINAR JOHN VIKSE, a dependent and neglected child.

No. 11059.
Submitted April 6, 1966. Decided April 25, 1966.
413 P.2d 876.

418

Robert L. Johnson (argued), Lewistown, for appellant.

Forrest H. Anderson, Atty. Gen., Helena, Leonard H. Mc-Kinney (argued), Lewistown, Thomas Mahan (argued), Helent, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order by the district court of the tenth judicial district, in and for Fergus County, declaring Einar John Vikse a dependent and neglected child and awarding custody, care and control to the Division of Child Welfare Services of the Department of Public Welfare (hereinafter called the Welfare Department).

Einar John was born to Sherie Vikse and Einar Vikse on July 31, 1963. The child was just past two years at the date of the hearing of this cause.

The mother of Einar John was released from the State Hospital at Warm Springs, Montana, at about the time of the child's birth, and she cared for him until November, 1963, when she again returned to Warm Springs. She has been released and returned to her natural home a few times on a trial basis, such trials ending unsuccessfully. The Welfare Department alleges that prognosis for her satisfactory recovery in the future is poor, but no evidence whatsoever is found in the record supporting that contention.

When Mrs. Vikse was returned to Warm Springs in the Fall of 1963, Mr. Vikse, the father, placed his child in the home of his wife's sister in Saco, Montana. This arrangement lasted until the Spring of 1965, when these relatives informed Mr. Vikse that they no longer could care for the child. At that time, Mr. Vikse went to the Welfare Department for aid and

advice. Since the Welfare Department had no foster home immediately available, Mr. Vikse placed the child privately until the Department could find a suitable foster home. In May 1965, such a home was found and the child was transferred to it.

The transfer and the agreement between Mr. Vikse and the Welfare Department is described by Marjorie Henderson, Director of the Fergus County Department of Public Welfare:

"A. The placement was made under a parental agreement. Mr. Vikse indicated at the time that he would be willing for the agency to have temporary custody, but in line with our belief that a child should have consistent care, that they should be—we could not go along with just temporary plans and for that reason when the foster home placement was made, there was time limit placed on this temporary kind of a plan.

&ast; &ast; &ast; &ast; &ast;

"Q. What was the time limit placed under this foster home placement? A. August 1st.

"Q. Of 1965? A. Yes."

The time limit was conditioned upon Mr. Vikse coming forth with a satisfactory permanent plan for the child's care. He failed to supply such a plan by August 1, 1965. The record shows that misfortune still attended him and no improvement in his circumstances was realized during the summer of 1965. The Welfare Department filed its Petition for Permanent Custody on September 30, 1965, and hearing was held on November 4, 1965.

The petition stated the child was dependent and neglected as defined by R.C.M.1947, § 10-501:

"For the purpose of this act, the words 'dependent child' or 'neglected child' shall mean any child of the age of sixteen years, or under that age, who is dependent upon the public for support, and who is destitute, homeless, or dependent, or who has no proper parental care or guardianship, or who habitually begs or receives alms, or who is found living in any house of ill-

fame, or in any house of prostitution, or whose home, by reason of neglect, cruelty, or depravity on the part of its parents, guardian, or other person in whose care it may be, is an unfit place for such child, or whose environment is such as to warrant the state, in the interest of the child, to assume its guardianship or support."

Although the statute seems to make the words "dependent child" and "neglected child" synonymous, such would not seem to be the technical sense of the terms, since "neglected child" is a broader term than "dependent child." The former describes a parental failure to exercise the degree of care demanded by the family circumstances. It concerns disregard of parental duty whether intentional or unintentional. A "dependent child" is one who must be supported by others than its natural or legal guardians.

Under the above definitions, Einar John is more the "dependent child" than the "neglected child." Even though our statutes run the terms together, we feel the facts of this case require a consideration of their true meaning.

The duty placed upon the court in cases of this nature is burdensome and painful. The court's discretion must necessarily be broad. The statutes concerned are to be construed liberally to the end that their purpose be carried out. R.C.M. 1947, § 10-516.

In inquiries such as this, the polestar is the best interest and welfare of the child.

In this regard, Marjorie Henderson testified that "we know from past experience that a child, particularly a child of this age, must have these permanent relationships in order to establish a sense of identity, and that if they do not have them, they become very emotionally disturbed, that is, these frequent moves are one of the most damaging things for a young child." Upon this view of Einar John's best interests, the Welfare Department felt justified in placing a two-month time limit upon its temporary custody over the child.

■■ It does not seem necessary to discuss the validity of such an agreement in this case, since the Petition for Permanent Custody does not rely upon the agreement as the grounds upon which the award of permanent custody should be made. Suffice it to say that such agreements, whether voluntary or involuntary, will not of themselves serve as any impediment upon the trial judge in determining the best interests of the child. The District Court must be concerned with the best interests of the child in light of a legal determination that the child is or is not a dependent and neglected child according to R.C.M.1947, § 10-501. The determination rests upon the facts and circumstances presented at the hearing and is geared to present circumstances more than past history when the issue is one of dependency. It is for this reason that we felt it necessary above to make a distinction between a "dependent child" and a "neglected child."

■ A fair review of the record reveals no substantial evidence that at the time of the hearing Einar John was a "dependent" child. At the time of hearing, Mr. Vikse had secured construction work paying him about $150 per week. He had also obtained an apartment suitable for the care and custody of his son. He had made initial efforts, even though feeble, to secure adult supervision for the child during his absences from home. The record shows that by November 4, 1965, Mr. Vikse had overcome somewhat his poverty-caused inability to provide for his child.

The record further fails to show anything tending to support a theory that Mr. Vikse had lost his right to reclaim his child. The period of his inability to support the child, as far as the Welfare Department's aid is concerned, was of relatively short duration. During that time, Mr. Vikse made what payments he could under conditions of temporary, part-time employment for the child's support. He visited the child once a week when that was possible and maintained his relationship as the child's father. He has considered a divorce from his institutionalized wife, with her agreement, as a possible avenue of escape from

his predicaments, thereby leaving the way clear for him to re-marry in order to establish permanent family relationships for his son.

The record reveals no abuse, abandonment or depravity—in fact, quite the contrary. Considering the father's present ability and desire to provide for his son, the situation in the future is one to be tested, not assumed. Under such facts, we feel the trial court acted beyond its discretion in declaring Einar John a dependent and neglected child.

Definitive standards are nearly impossible to establish in cases such as this. Since we are here concerned with the question of dependency, perhaps the following will illustrate the direction of our opinion.

In Ex parte Bourquin, 88 Mont. 118, 124, 290 P. 250, this court said:

"Manifestly, the expression 'welfare of the child' was never intended to penalize a parent because he may not be financially able to provide his child with the comforts and advantages which more fortunate parents may provide for their children. All the law requires is that the parent be honest and respectable, with disposition and capacity to maintain and educate his child."

In re Sweet, Okl., 317 P.2d 231, after quoting the Bourquin Case, supra, the Oklahoma Court stated:

"To justify the courts in depriving parents of the care and custody of their own children, the parent's 'special unfitness' must be shown by evidence that is clear and conclusive and sufficient to make it appear that the necessity for doing so is imperative. And, in attempting to prove the 'special unfitness' referred to, it is not enough to show that the parents have bad habits or faults of character. It must be established that their condition in life and character and habits are such that provision for the children's ordinary comfort and contentment, or their intellectual or moral development, cannot reasonably be expected at their hands. [Citing cases.]"

■ The problems and difficulties attending the Vikse family are multiple and have not been completely removed. Other considerations beyond the scope of this appeal, including the fact that three other children of Sherie and John Vikse are in the custody of the Welfare Department, justify continuing observation and supervision over the situation. R.C.M.1947, § 10-510, permits the court to return custody of children to the parents when the conditions of dependency have been removed, and the court may order such custody upon whatever conditions or supervision is deemed necessary under the facts of the case. One such condition necessarily must be that Mr. Vikse secure adult supervision for the child while he is away from his home. There may be other conditions deemed necessary by the trial judge.

For the above reasons, the judgment is reversed and the case remanded for proceedings in accordance herewith.

MR. JUSTICES DOYLE, JOHN C. HARRISON and ADAIR concur.

MR. CHIEF JUSTICE JAMES T. HARRISON, deeming himself disqualified, took no part in this appeal.