No. 12133

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

IN THE MATTER OF DECLARING:
MARILYN LYNN CORNELIUSEN, DENNIS LEWIS
CORNELIUSEN, DEWAYNE ALVIN CORNELIUSEN,
and CLINTON SHANE CORNELIUSEN,

Dependent and Neglected Children.

---

Appeal from: District Court of the Sixteenth Judicial District,
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Francis J. McCarvel argued, Glendive, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
Cecil N. Brown, County Attorney, argued, Terry,
Montana.

---

Submitted: February 15, 1972

Decided: MAR 6 - 1972

Filed: MAR 6 - 1972

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the district court of the sixteenth judicial district, county of Prairie, declaring four children of Wilma Jean Corneliusen to be dependent and neglected children, and awarding custody, care and control to the State Welfare Department.

Wilma Jean Corneliusen, the mother of the four children, is a 32 year old woman of Indian heritage. Her early life was spent in a Catholic convent where she received a high school education. Sometime after graduation from high school in South Dakota in 1959, she appeared in a Montana welfare office seeking aid as an unwed mother. At that time she was given help and advice and released her child for adoption. She married one Larry Corneliusen in 1961, and two children were born of this marriage, Marilyn born in 1962, and Dennis born in 1963. In 1964 Larry Corneliusen abandoned his wife and two children; he has not been heard from since.

At the time of the hearing in April 1971, the Corneliusens were not divorced. Subsequent to 1964 Wilma Jean has had two more children, Dewayne Alvin born September 26, 1969, and Clinton Shane born August 26, 1970. These two children have different fathers.

The transcript reveals that from July 1964, Wilma Jean has relied upon Aid to Dependent Children funds from the Division of Child Welfare Services of the Department of Public Welfare of the State of Montana, to support her children. It further indicates that she had an alcoholic problem and was known by the welfare and law officers as being promiscuous. Evidence

- 2 -

introduced at the hearing indicated that the monthly Aid to Dependent Children checks were used partially to supply her alcoholic needs and did not entirely go for the care of her children.

Considerable evidence was produced indicating dependency and neglect of the four children, including statements made by Wilma Jean that she hated some of the children and threatened to kill the youngest. The local welfare officers worked constantly with Wilma Jean but finally concluded in view of her threats to the lives of one or more of the children, that they should be removed from her and placed where they would have an opportunity to develop as normal children.

Wilma Jean Corneliusen appeals from the order of the district court and raises three issues for consideration:

1. Were the minor children of appellant "neglected" within the meaning of section 10-501, R.C.M. 1947?

2. Did the district court abuse its discretion in issuing the judgment of April 9, 1971, giving respondent welfare department the right of adoption?

3. Should the district court have allowed the appellant more time to straighten out her emotional problems?

Appellant concedes that the children are "dependent" children within the meaning of section 10-501, R.C.M. 1947, for the record shows the family has been dependent on public assistance since 1964, but, relying upon this Court's decision In the Matter of Vikse, 147 Mont. 417, 420, 413 P.2d 876, she argues that this Court should liberally interpret the term "neglected child".

Recognizing, as we must, that this is an impoverished family, this does not mean the mother can use such impoverishment

as a shield to hide behind in the neglect of her children when her very acts deprived the children of attention and care. Misuse of welfare funds, lack of medical care and failure to properly provide within the funds allocated clearly reveal neglect of her children. Justice Castles in _Vikse_ said:

> "* * * 'neglected child' is a broader term than 'dependent child'. The former describes a parental failure to exercise the degree of care demanded by family circumstances. It concerns disregard of parental duty whether intentional or unintentional."

That is the very case presented the trial judge in the instant case. We find no merit to appellant's Issue 1 for the evidence shows both "dependent" and "neglected" children.

We will combine Issues 2 and 3 for discussion for if Issue 3 were favorably decided for the appellant, it would of necessity set aside Issue 2.

It has been written many times, as often as this type of case comes before a court, that such cases are traumatic and distressing for all concerned and present perplexing problems for decision. No matter what conclusion is reached, it is inevitable that heartaches, misery and despair will result.

Here, we begin with the presumption that the decision of the district court is correct. The duty of deciding controversy over the rights to custody of children is a delicate one, lodged with the district court. The decision of that court should not be disturbed except upon a clear showing of an abuse of discretion. Ex parte Bourguin, 88 Mont. 118, 290 P. 250; In re Thompson, 77 Mont. 466, 251 P. 163.

It was the trial court's duty, and ours too, to concern ourselves with the best interests and welfare of the children.

- 4 -

Here, the two older children are of early school age and experiences with their mother has left them insecure, troubled and frightened. Can they continue to grow and mature normally, while hopefully waiting for the mother to straighten out her emotional problems? We think not. Children, particularly children of the ages herein involved, must have permanent relationships in order that they may establish a sense of identity. Without such relationships they may well become emotionally disturbed. Were it not for Mrs. Bond of the Welfare Department and good neighbors who have all worked long and hard trying to help appellant, these children might be facing far more grievous problems than they have at the present time.

The district court after hearing all of the testimony and talking with the two older children, decided that time had run out for appellant; that the children's best interests required they no longer wait for appellant to do something to stablize her emotional life. We agree with the district court's decision to put all the children in the custody of the Welfare Department of the State of Montana, with the right of adoption.

There being no abuse of discretion, the judgment is affirmed.

John Conway Harrison
Associate Justice

- 5 -

We Concur:

_____
Chief Justice

_____

_____
Associate Justices

_____
Hon. Jack Shanstrom, District
Judge, sitting for Associate
Justice Wesley Castles.