No. 13193

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

CHERYL LEIFER FOSS,

Appellant and Petitioner,

-vs-

JAMES T. LEIFER,

Respondent.

Appeal from: District Court of the Fifth Judicial District,
Honorable R. J. Nelson, Judge presiding.

Counsel of Record:

For Appellant:

Jardine, Stephenson, Blewett and Weaver, Great Falls,
Montana
K. Dale Schwanke argued, Great Falls, Montana

For Respondent:

Swanberg, Koby, Swanberg and Matteucci, Great Falls,
Montana
Brett C. Asselstine argued, Great Falls, Montana

Submitted: April 19, 1976

Decided: JUN 14 1976

Filed: JUN 14 1976

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal concerns a petition seeking to modify child custody provisions contained in a decree of divorce granted to appellant on August 10, 1972. The judgment appealed from is that of the district court, Jefferson County, entered December 17, 1975.

Appellant Cheryl Leifer Foss and respondent James T. Leifer were married in the city of Butte, Montana, in November 1968. Their son Christopher Lance Leifer was born the following year. The divorce decree provided,inter alia,that appellant should have the care, custody and control of the child, subject to the right of reasonable visitation by respondent. The court ordered respondent to pay child support in the amount of $100 per month. Respondent has never defaulted in paying the child support payments.

Respondent made no attempt to contest the provisions of the divorce decree at the time. Shortly after the divorce respondent moved to the state of Michigan and later to Pullman, Washington, where he spent approximately eighteen months completing requirements necessary to obtain a Master's degree. Following his graduation respondent became employed in Yakima, Washington. At the time of the hearing on the petition for modification, respondent was contemplating the prospect of a transfer on his employer's behalf to Hermiston, Oregon. It is our understanding that he has now made that move.

Following her divorce, appellant was employed at several local financial institutions in the city of Butte. She was transferred by her employer to Great Falls in May 1974. She gave birth to a second child in September 1973, and at the time this matter was heard, the child was living with appellant and her son Lance. In early January 1975, appellant began to date

- 2 -

Richard Foss. He moved into appellant's home several weeks later. They were subsequently married. Several months after the marriage, appellant was able to terminate her employment to devote more time to the care of her two children.

Respondent commenced the action to petition for modification of the divorce decree shortly after receiving a letter from his ex-wife informing him that she and Foss had begun living together. In his petition respondent alleged that circumstances bearing a direct relationship to the best interests of his child had materially changed since the date of the divorce decree in that:

> "a. * * * the spiritual and moral atmosphere in the home has deteriorated to a state wherein the issue of the parties hereto, Christopher Lance Leifer, will be materially affected and altered.

> "b.* * * the plaintiff in the above captioned matter is residing with a male who is not the spouse of the above named plaintiff and the presence of this individual has aided and contributed to the moral decline and decay of the atmosphere in which the minor party of the parties hereto must reside."

The parties agreed by stipulation that the matter be heard in the eighth judicial district, Cascade County, and a two-day hearing commenced on October 16, 1975. The district court found respondent was "best suited and motivated morally and emotionally to meet the needs of Lance Leifer and is the parent most likely to see the needs of Lance Leifer are met." and granted respondent's petition.

In Montana it has been firmly established that the court's jurisdiction in matters of custody is of a continuing nature. Barbour v. Barbour, 134 Mont. 317, 330 P.2d 1093; Libra v. Libra, 154 Mont. 222, 462 P.2d 178. This concept also controls under the recently enacted Uniform Marriage and Divorce Act, section 48-339, R.C.M. 1947, which clearly provides district courts may not exercise discretionary power to modify a prior custody decree unless two basic elements are shown to exist: 1) new facts or facts unknown to the court at the time the initial decree was entered

demonstrate that a change has occurred in the circumstances of the child or those of his custodian; and 2) this change is sufficient to warrant a modification in order to promote the particular child's best interests. This basic standard was applied in this jurisdiction long before the enactment of the new law, and a determination of which law would be applicable under the facts presented would have no bearing on the result. Jewett v. Jewett, 73 Mont. 591, 237 P.702; Trudgen v. Trudgen, 134 Mont. 174, 329 P.2d 225; Simon v. Simon, 154 Mont. 193, 461 P.2d 851.

Here, the issue to be decided is whether the district court, in granting the petition for modification, abused its discretion. Although no specific finding to this effect appears in the order, such judicial action must inherently be predicated on the conclusion that a change in circumstances had occurred sufficient to endanger the welfare of the child to support the modification order. In reviewing orders which affect the custody of a child, this Court is mindful that the primary duty of deciding the proper custody of children is the task of the district court. Thus, all reasonable presumptions as to the correctness of that determination will be made. No ruling will be disturbed absent a clear showing the district court's discretion was abused. In re Corneliusen et al., 159 Mont.6, 494 P.2d 908; State ex rel. Veach v. Veach, 122 Mont. 47, 195 P.2d 697; Ex parte Bourguin, 88 Mont. 118, 290 P. 250; In re Thompson, 77 Mont. 466, 251 P. 163.

It is elemental that the phrase "change in circumstances" is a term of art which must not be considered in a vacuum. No change in circumstances, regardless of its substantiality, is legally sufficient to support a modification order altering custody unless the best interests and general welfare of the child will be promoted. Altmaier v. Altmaier, 135 Mont. 404, 340

P.2d 829; Haynes v. Fillner, 106 Mont. 59, 75 P.2d 802. In all cases, the lodestar of the district court in exercise of its discretion is the welfare and best interests of the child, and not the parent. Grant v. Grant, 166 Mont. 229, 531 P.2d 1007, 32 St.Rep. 191; In re Adoption of Biery, 164 Mont. 353, 522 P. 2d 1377; Turk v. Turk, 164 Mont. 35, 518 P.2d 804.

In the instant case the pleadings and testimony offered at hearing suggest the issue to be decided should be considerably narrowed. The record is replete with evidence that both parties to this action are well-qualified to be fit and proper parents to Christopher Lance Leifer. Respondent is a well-educated individual with promising and steady employment. The record amply demonstrates the affection respondent has for his son and his willingness to do all that is necessary to provide him with an environment conducive to a happy childhood and the development of a well-adjusted adulthood.

Investigations made by the Department of Social and Rehabilitation Services establish that appellant is a capable and enthusiastic mother to her two children, and that her present husband is qualified to adopt the children. Neither party seriously challenges the general fitness of the other regarding parenthood. The district court made no finding to the effect that appellant was an unfit parent. Reports concerning both parties were requested and furnished to the district court by a clinical psychologist. These reports show a conspicuous absence of the types of adverse psychological factors which, if possessed by either party, might tend to affect unfavorably the well-being of the child. The record does show that the child has been some- what slow to develop due to a rather loosely defined "learning disability". The prognosis concerning this problem was described in the record as good, and the record fails to substantially connect the problem to the home environment.

The clinical psychologist testified:

"A. * * * I think this youngster has a <u>natural difficulty coping with change</u>, coping with a great many pieces of information which might be given to him at one time * * *.

"Q. Would the fact that your report said Mrs. Foss, formerly Mrs. Leifer had some guilt feelings about her past and about her family * * * affect a child? A. It could. But in this case I do not think it does to any marked degree." (Emphasis supplied.]

The fact that a parent allows her paramour to live with her for a short time before their marriage does not, by itself, constitute a "change in circumstances" sufficient to support the granting of a custodial modification order. This Court has never specifically decided this precise issue. But a number of recent cases from other jurisdictions have examined the matter. They are almost unanimous in holding that such conduct may be the basis for a change in custody only upon a showing that the children have in some way been adversely affected. Christensen v. Christensen, 31 Ill.App.3d 1041, 335 N.E.2d 581; Van Buskirk v. Van Buskirk, 19 Ill.App.3d 647, 312 N.E.2d 395; Christian v. Randall, 33 Colo.App. 129, 516 P.2d 132; Howland v. Howland, (Ind.App. 1975), 337 N.E.2d 555. Of particular relevance is the language of the Washington State Supreme Court speaking through Justice Farris in Wildermuth v. Wildermuth, 14 Wash.App. 442, 542 P.2d 463, 466:

"We find that the controlling statute requires more than a showing of illicit conduct by the parent who has custody. There must be a showing of the effect of that conduct upon the minor child or children. * * * Unless the record contains evidence from which the trier of fact can reasonably conclude that the child's environment is detrimental to his or her physical, mental, or emotional health and, further, that the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child, the court errs in entering an order changing custody."

Here, the record is devoid of evidence to reasonably establish that the conduct of the custodial parent caused a "moral decline" in the home which has either materially or adversely affected the well-being of the minor child. Further, the record establishes that progress concerning the child's aforementioned learning disability

might be interrupted by a geographical change of residence, indicating that change must be clearly justified to promote the child's best interests.

Returning to the issue of abuse of discretion on the part of the district judge in modifying the divorce decree, we consider first whether any change of circumstances has occurred which affects the best interests and general welfare of the child. No change of substance appears from the record. The district court found no lack of fitness of the mother. There simply appears no evidence upon which the district court could fund such a lack of fitness including love, affection and care. Thus, this amounts to an abuse of discretion to change custody without a finding of changed circumstances.

The order of the district court modifying and awarding custody to respondent is set aside.


_____
Justice

We Concur:

_____

_____
Justices


Hon. Arnold Olsen, District Judge
sitting for Chief Justice James
T. Harrison.


- 7 -

Mr. Justice Frank I. Haswell dissenting:

I find substantial credible evidence in the record supporting the custody award of the district court. In my view, the majority here has simply substituted its judgment on custody for that of the district court contrary to law.

_____
Justice.

. . . . . . . . . . . . . . . . . . . . . . .

Mr. Arnold Olsen, District Judge, sitting for Chief Justice James T. Harrison, dissenting:

I agree with the foregoing dissent of Mr. Justice Frank I. Haswell.

_____
District Judge, sitting for
Chief Justice James T. Harrison.

- 8 -