JUSTICE TRIEWEILER
dissenting.
I dissent from the opinion of the majority.
The majority opinion is based almost exclusively on the testimony of Marcus Ulland (the father) and representations made in affidavits filed by his attorney.
There was other evidence in the record from the testimony of Jan Gregson (the mother), several counselors, and Rian Ulland herself which provide a different explanation for the deterioration of relations among these three people.
Rian Ulland has lived with her mother for the first 12 years of her life. She was a part of the family unit formed by her mother and her stepfather for ten years immediately preceding the District Court’s decision which transferred custody to her father.
Rian had spent most of her formative years in Helena, and enrolled in the Helena school system in kindergarten. By all accounts, she had an active, successful, and happy life. She was involved in her church youth group, taught swimming lessons at the YMCA, had a role in the Middle School play immediately before the District Court’s decision, and had planned to be in the play for the next semester. At the time of the District Court hearing, she was about to try out for the swim team; she was a member of the seventh grade basketball team, and she had successfully tried out for a singing group at the Middle School known as “Celebrations.”
*171 In her interview with the District Judge, Rian explained that it was she who requested that her mother ask the court to modify the visitation provisions in her parents’ divorce decree so that she would not have to spend so much time with her father. She pointed out that she loved her mother and stepfather very much and enjoyed living and spending time with them, but did not feel that her father had ever made much of an effort to get to know her. She stated that her favorite activities, other than her athletic interests in softball, swimming, and basketball, were spending time with her friends, family, and maternal grandparents.
By all accounts, the family unit formed by the mother, stepfather, and Rian was an extremely close, loving, and nurturing family.
James Farrell is a counselor who specializes in working with children and evaluating dysfunctional families. He evaluated Rian prior to the most recent hearings held in the District Court. From that evaluation he concluded the she was pleasant, had an appropriate demeanor, was brighter than average, and assertive. He reported that her living situation with her mother was a positive one, and found no evidence that her mother had interfered with her ability to form a positive relationship with her father.
The only counselors, in addition to James Farrell, who provided opinions in this case were Jane S. Fisher, Ph.D., who evaluated Rian subsequent to the court’s decree, and Marcia K. Wall, Rian’s counselor at Helena Middle School.
Ms. Fisher concluded that Rian had an extremely close and bonded relationship with her mother, but that she was uncomfortable with and did not trust her father. She concluded that the responsibility for Rian’s lack of a relationship with her father was his. Following the District Court’s decision, Rian was unable to sleep, unable to eat, confused, frightened, and depressed.
Ms. Wall described Rian as a wonderful girl who was mature beyond her years and academically very successful. During the semester prior to the District Court’s decision transferring custody to her father, she had nearly an “A” average in school. It was Ms. Wall’s opinion that it was in Rian’s best interest that she be left in the custody of her mother and stepfather.
There was substantial evidence that Rian’s estrangement from her father was not primarily related to the recent disputes between her mother and father regarding exercise of her father’s visitation rights.
There was evidence that during the first seven years of her life, Rian’s father made very little effort to communicate with her, and *172 that even in the most recent years prior to the District Court’s hearing, his efforts were sporadic and inconsistent. There was substantial evidence that her father’s unpredictable efforts to spend time with her were a disruption to her very active life. Many of the conflicts which arose between her mother and father over visitation resulted from efforts by her mother to protect her life from repeated disruption.
I provide this background information to point out that there was more than one version of the events which led to the District Court hearing to modify custody. However, even if one accepts the version of events reported by the father, as did the District Court and the majority, it appears to me that the result of the District Court’s decision is simply to punish Rian’s mother for her lack of cooperation, rather than provide for Rian’s best interest.
In Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309, we stated that:
“[Election 48-339, R.C.M. 1947 [now 40-4-219, MCA], ... clearly provides district courts may not exercise discretionary power to modify a prior custody decree unless two basic elements are shown to exist: 1) new facts or facts unknown to the court at the time the initial decree was entered demonstrate that a change has occurred in the circumstances of the child or those of his custodian; and 2) this change is sufficient to warrant a modification in order to promote the particular child’s best interests. This basic standard was applied in this jurisdiction long before the enactment of the new law, and a determination of which law would be applicable under the facts presented would have no bearing on the result. Jewett v. Jewett, 73 Mont. 591, 237 P. 702; Trudgen v. Trudgen, 134 Mont. 174, 329 P.2d 225; Simon v. Simon, 154 Mont. 193, 461 P.2d 851.
“It is elemental that the phrase ‘change in circumstances’ is a term of art which must not be considered in a vacuum. No change in circumstances, regardless of its substantiality, is legally sufficient to support a modification order altering custody unless the best interests and general welfare of the child will be promoted. Altmaier v. Altmaier, 135 Mont. 404, 340 P.2d 829; Haynes v. Fillner, 106 Mont. 59, 75 P.2d 802. In all cases, the lodestar of the district court in exercise of its discretion is the welfare and best interests of the child, and not the parent. Grant v. Grant, 166 Mont. 229, 531 P.2d 1007, 32 St.Rep. 191; In re Adoption of Biery, 164 Mont. 353, 522 P.2d 1377; Turk v. Turk, 164 Mont. 35, 518 P.2d 804.”
*173 Foss, 550 P.2d at 1311.
While the District Court’s findings of fact make frequent reference to the father’s lack of relationship with his daughter and the mother’s role in adversely affecting that relationship, there is absolutely no explanation of how the daughter’s best interest will be served by uprooting her from the only family she has ever known and taking her from the primary community in which she has lived and where she has prospered to send her to live with a family that she dislikes in unfamiliar surroundings over 500 miles away.
Furthermore, the District Court made practically no findings regarding those statutory factors which must be considered in deciding what is in a child’s best interest. Section 40-4-212, MCA, provides in relevant part that:
“(1) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors, including but not limited to:
“(a) the wishes of the child’s parent or parents as to his custody;
“(b) the wishes of the child as to his custodian;
“(c) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child’s best interest;
“(d) the child’s adjustment to his home, school, and community;
“(e) the mental and physical health of all individuals involved;
“(f) physical abuse or threat of physical abuse by one parent against the other parent or the child; and
“(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent.”
The last of these two factors were not relevant in this case. However, all of the first five factors, had they been considered, compel a conclusion that the District Court abused its discretion by transferring custody from the mother to the father. Although the wishes of the child’s parents were divided, it was the child’s specific request that she be allowed to remain in the only family unit that she had ever known. At the age of 12, her preference should have been given significant consideration.
The interaction of Rian with her family, her community, and her maternal grandparents strongly favored allowing her to continue living with her mother in Montana. The undisputed evidence was that she was extremely well adjusted to her home, school, and community, and that her mental and physical health were exceptional.
*174 Not only did the statutoiy factors strongly favor continued custody with her mother, but the District Court failed to consider all but one of these factors in its findings of fact. In considering Rian’s interaction and interrelationship with her parents, the District Court found:
“31. Jan, Glenn Gregson, and Rian have a close, loving family relationship. Rian is active in school and extracurricular activities, including church, YMCA, theater, Sunday school, and swimming.
“32. Marcus and his wife, Dawn Ulland have a loving relationship with Rian, and they get along well together.”
The District Court made no findings regarding any specific element which would support a change of custody to Rian’s father.
In the past, we have refused to affirm findings that were deficient in this respect. In In re the Marriage of Keating (1984), 212 Mont. 462, 689 P.2d 249, we held that:
“An award of custody shall be determined in accordance with the best interest of the child. In determining custody in accordance with the best interest of the child, the District Court is statutorily required to consider all relevant factors including:
“ ‘(1) the wishes of the child’s parent or parents as to his custody;
“ ‘(2) the wishes of the child as to his custodian;
“ ‘(3) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child’s best interest;
“ ‘(4) the child’s adjustment to his home, school, and community; and
“ ‘(5) the mental and physical health of all individuals involved.’ Section 40-4-212, MCA.
“ ‘The District Court need not make specific findings on each of the elements. Speer v. Speer (Mont. 1982), [201 Mont. 418,] 654 P.2d 1001, 1003, 39 St.Rep. 2204, 2206. However, the “essential and determining facts upon which the District Court rested its conclusion” must be expressed. Cameron v. Cameron (1982), 197 Mont. 226, 231, 641 P.2d 1057, 1060.’ Hardy v. Hans (Mont. 1984), [212 Mont. 25,] 685 P.2d 372, 374, 41 St.Rep. 1566, 1569.
“Hardy is distinguishable from this case in that here there are no findings or other indications by the court that it considered each of the factors set forth in Section 40-4-212, MCA. Absent an indication that the trial court considered all of the statutorily mandated factors, *175 the award of custody cannot be upheld.”
Keating, 689 P.2d at 251-52.
I would reverse the judgment of the District Court for several reasons. First of all, there is no indication that the District Court considered all of the statutorily mandated factors set forth in 40-4-212, MCA, in modifying the award of Rian’s custody.
Second, if the court had considered all of the statutorily mandated factors, it would have been a clear abuse of its discretion to change custody from Jan to Marcus. This decision did not further Rian’s best interest in any way. It uprooted her, against her own wishes and the advice of every counselor she had ever seen, from her community, her family, and all other reliable relationships she had grown to depend on. By every factor which the court was required to consider, it was in Rian’s best interest to continue in the environment and the family in which she had prospered. The District Court’s order was clearly to punish Rian’s mother and reward her father. However, there is very little, if any, discussion about Rian’s interests in this case.
Under these circumstances, it is difficult to conclude that Rian’s best interest was the District Court’s primary consideration. For that reason, I would reverse the judgment of the District Court.
I concur in the foregoing dissent of Justice Trieweiler.
CHIEF JUSTICE TURNAGE concurs in the foregoing dissent of JUSTICE TRIEWEILER.