No. 13775

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

IN THE MATTER OF DECLARING
HEATHER MARIE FISH, A YOUTH IN
NEED OF CARE

Appeal from:    District Court of the Eighth Judicial District,
                Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

    For Appellant:

        William E. Berger argued, Lewistown, Montana
        Steven Bunch argued, Helena, Montana

    For Respondent:

        J. Fred Bourdeau, County Attorney, Great Falls,
         Montana
        Thomas H. Mahan argued, Helena, Montana
        David Paull argued, Great Falls, Montana

                                    Submitted:   September 13, 1977

                                    Decided SEP 2 7 1977

Filed: SEP 2 1977

_Thomas J. Kearney_
                                                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by the natural mother of a minor child from an order of the district court, Cascade County, awarding permanent custody of the child to the Division of Child Welfare Services of the Department of Social and Rehabilitation Services of the State of Montana, with authority to consent to adoption.

On January 9, 1975, the Department of Social and Rehabilitation Services (hereinafter, SRS), through their office in Great Falls, petitioned the district court of Cascade County for permanent custody of the minor child, requesting that the child be declared dependent and neglected.

Hearing on the petition was held on May 1, 1975. The district court, Honorable Truman G. Bradford presiding, ordered that the child be and remain in the temporary custody of SRS for at least six months, with leave to renew the petition for permanent custody.

The petition was renewed by SRS and a second hearing held on December 12, 1975. The district court ordered that temporary custody of the child continue with SRS for another six months, again with leave to renew the petition.

On October 1, 1976, the natural mother of the child moved to vacate the order of December 12, 1975, and for an order granting permanent custody of the child to her. A hearing on the motion was held on November 4, 1976. At the close of the hearing, the district court orally ordered that temporary custody remain in SRS and physical custody be in the mother on an experimental basis. On November 30, 1976, the district court issued a written order awarding permanent custody of the child to SRS, with authority to consent to the adoption of the child. From this order, the natural mother appeals.

Heather Marie Fish, the minor child, was born to Linda Fish on February 23, 1974. At the time of the birth, Linda Fish was unemployed, unmarried, and receiving funds from the Aid to Dependent Children program. Several weeks after the birth, Linda Fish was committed to Warm Springs State Hospital. During this time, the total responsibility for care of the child was placed in the child's maternal grandmother.

Linda Fish returned to Great Falls in July, 1974, but returned voluntarily to Warm Springs in November, 1974. Soon thereafter, SRS filed its initial petition for permanent custody, alleging that Linda Fish was unable to provide adequate care for the child. Temporary custody was awarded to SRS by a May 1, 1975 order of the district court.

Since November 13, 1974, and pursuant to placement by SRS, the child has remained in the continuous custody of a foster family in the Great Falls area.

Following her second release from Warm Springs, Linda Fish has undertaken employment from time to time in various positions, such employment being interrupted by the birth of a second child. Linda Fish has been and presently remains unmarried.

Hearing on the renewed petition of SRS was held on December 12, 1975. By an order issued that same day, the district court extended custody in SRS for an additional six months.

On November 4, 1976, a hearing was held on the motion of Linda Fish to vacate the order of December 12, 1975, and to obtain an order awarding permanent custody of the child to her. At the time of the hearing, the child was approximately two years and nine months of age. Evidence at the hearing was concentrated on the fitness of Linda Fish as a parent. Testimony of witnesses for the natural mother, including a social worker and psychologist who maintained close working relationships with Linda Fish, revealed improve-

ment in the desire and ability of Linda Fish to perform the duties of a parent. It was shown that Linda Fish at present has the second child in her sole care, and that the child is clean and well cared for. Linda Fish was shown to presently have increased financial resources for the care of the children.

The remaining testimony, that which was offered by SRS, related to the relationship of the child with Linda Fish as evidenced by the child's behavior relative to visitation periods. The sole witness for SRS, a social worker who had supervised the bi-monthly visitation periods and the foster family situation, testified as to the close relationship between the child and the foster parents, and a somewhat negative reaction of the child to Linda Fish. The witness testified that, in her professional opinion, the child's development would be negatively affected by a transfer in physical custody.

At the close of the hearing, the district court ordered that temporary custody remain in SRS, with physical custody in the natural mother on a trial basis. However, on November 30, 1976, the district court, without having found the child to be "abused, dependent or neglected", entered an order placing permanent custody in SRS, with authority to consent to adoption. No explanation has been offered as to why the second written order is at variance with the prior oral order.

In this appeal, the natural mother seeks review of the actions of the district court in the context of three issues. In our view, the three issues constitute but one determinative inquiry: Did the district court abuse its discretion in awarding permanent custody to SRS while failing to find that the child was "abused, dependent or neglected" within the meaning of section 10-1301, R.C.M. 1947? We hold that it did.

The natural mother argues that the evidence introduced at the hearing of November 4, 1976, clearly supports a finding that

she is presently a fit and proper parent. Our attention is focused on the fact that the district court did at no time following the hearing make a finding of parental unfitness or that the child is abused, dependent or neglected. It is maintained that such findings are an indispensable prerequisite to termination of parental rights to the care, custody and control of her child by an award of permanent custody to SRS and, ultimately, to individuals who are not the natural parents of such child.

SRS, in contrast, asserts that the central inquiry in a case such as this is whether a permanent transfer of custody to the social agency is "in the best interests of the child." It is submitted that the best interests of the child should prevail over the desire of the natural mother for custody in this case, and that it would be in the best interest of Heather Marie Fish that her custody be permanently transferred to SRS such that she may be adopted by the foster family.

We have consistently recognized that the primary responsibility for determining the proper custody of a child rests with the district court. The reasoning behind such a rule appears in the language of this Court in the case of In the Matter of the Adoption of Biery, 164 Mont. 353, 522 P.2d 1377 (1974):

> "What is, or what is not in the best interests of the child depends upon the facts and circumstances of each case. The responsibility of deciding custody is a delicate one which is lodged with the district court. The judge hearing oral testimony in such a controversy has a superior advantage in determining the same, and his decision ought not to be disturbed except upon a clear showing of abuse of discretion. (citing cases)." 164 Mont. at 356, 357.

This alone, however, does not give a district court the power in a case arising under the Abused, Neglected and Dependent Children or Youth Act, sections 10-1300 et seq., R.C.M. 1947. Here, the court neglected to make the threshold finding that the particular child is "abused, neglected or dependent" prior to transferring

permanent custody to a nonparent. Indeed, the court failed to make any disposition to effect the perceived "best interests of the child." Section 10-1312, R.C.M. 1947, in part provides:

> "(1) In a hearing on a petition under section 10-1310, R.C.M. 1947, the court shall determine whether said youth is an abused, neglected or dependent child, and ascertain as far as possible, the cause thereof."

Section 10-1314, R.C.M. 1947, clearly states in part:

> "(1) If a youth is found to be abused, neglected, or dependent, the court may enter its judgment making any of the following dispositions to protect the welfare of the youth:

> " * * *

> "(b) transfer legal custody to any of the following:

> "(1) department of social and rehabilitation services * * *." (Emphasis added.)

The above statutes make plain that a finding of abuse, neglect or dependency is the jurisdicitional prerequisite to any court ordered transfer of custody. It is then, and only then, that the "best interests of the child" standard has its application in the resolution of the question of custody. We reaffirm our position expressed in the recent Montana case involving an attempt to transfer custody from a parent to a nonparent:

> " * * *It is important to note that the mother was never * * * declared to be unfit to have the custody of the children. This being so, the district court had no jurisdiction to take the children away from their natural mother.

> "The 'best interests of the child' test is correctly used to determine custody rights between natural parents in divorce proceedings. In this situation the 'equal rights' to custody which both the father and the mother possess under section 61-105, R.C.M. 1947, are weighed in relation to each parent's ability to provide best for the child's physical, mental, and emotional needs upon the breakdown of the marital relationship. 'Fitness' of each parent is determined only in relation to the other and not to society as a whole. However, where third parties seek custody, it has long been the law in Montana that the right of the natural parent prevails until a showing of a forfeiture of this right. (Citing cases.) The Uniform Marriage and Divorce Act does not change this law. This forfeiture can result only where the parent's

> conduct does not meet the minimum standards
> of the child abuse, neglect and dependency
> statutes." Henderson v. Henderson, _____Mont.
> _____, _____P.2d _____, 34 St.Rep. 942, 947 (1977).

In the case before us, the district court patently failed to make the required findings. We hold that the district court was therefore without power to effect a permanent transfer of custody to SRS under section 10-1314 and abused its discretion in so doing.

Two other matters have been brought to this Court's attention in this case, which present serious procedural problems in cases of proposed termination of parental custody rights in favor of a nonparent or social agency. We deem these matters to merit considered discussion and resolution.

The first of these considerations involved the right of a child who is the subject of a custody proceeding to independent counsel in the representation of his or her "best interests." In the case at bar, following the hearing of November 4, 1976, an attorney was, by stipulation, permitted to intervene ostensibly as the "court appointed attorney for the child." In reality, such attorney was retained by and represented the interests of the foster parents seeking to ultimately adopt Heather Marie Fish.

As we have indicated herein, once the finding of an abused, neglected and dependent child case has been made, one of the primary considerations in a custody determination of the nature involved in this case is protection and promotion of the "best interests of the child." This being the case, we refer to the holding of this Court in Guardianship of Gullette, _____Mont._____, 566 P.2d 396, 34 St.Rep. 277, 282 (1977):

> " * * * where custody is in serious dispute, the
> court shall appoint independent counsel for the
> child or make a finding stating the reasons that
> such appointment was unnecessary." 34 St.Rep. at 282.

The critical word appearing in the above holding, in our view, is the word "independent". Cases such as the one before us typically involve at least three central interests: those of the natural parent(s), the nonparent(s), and finally, the child. The first two interests are, in the usual case, in direct conflict with each other. The child's interest, however, may be consistent with one or the other, or in some cases neither of such interests. Hence, in cases where the potential for inconsistency of interests exists, as here, the child must be afforded counsel which is independent from and disinterested in the parental/nonparental interests. In this manner, development of facts and production of evidence relevant to the child's best interests, in addition to the evidence offered by the parents or nonparents, is best assured.

The second dilemma faced by this Court arises from the length of time the child has resided with the foster family as opposed to the natural mother. The court appointed attorney for the child argues, in effect, that the fact of a lengthy period of residence with the nonparents can itself operate to prevent custody from being revested in the natural mother in a given case. We do not adopt such a position under the facts of this case. A child cannot be adversely possessed as can a piece of real property.

Further, and more importantly, to adopt such a position would be to ignore the reason for the period of nonparental custody: rehabilitation of the parent such that custody of the child may be regained on a permanent basis. Any efforts at rehabilitation would prove fruitless if a parent were to believe that the longer the period of counseling or treatment, the less would be the chance that the child would be returned to him or her on a permanent basis.

We do not approve of such an argument. Nor should the district courts assist in making possible such an argument under circumstances of this case.

Priority should be given by the district courts of this state to prompt resolution of custody proceedings under the Abused, Neglected or Dependent Children or Youth Act, such that the dilemma created by the delay necessarily inherent in the statutory scheme is minimized.

The appellant is granted a right to file a supplemental brief. The order of the district court is vacated and the cause is remanded for rehearing in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices