No. 13615

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

JERRY WAYNE GORE, RHONDA GAIL GORE,
and WILLIAM ROY GORE, II,
Youths in Need of Care.

Appeal from: District Court of the Eighth Judicial District,
Honorable R. D. McPhillips, Judge presiding.

Counsel of Record:

For Appellant:

Howard F. Strause argued, Great Falls, Montana

For Respondent:

J. Fred Bourdeau, County Attorney, Great Falls,
Montana
Carroll Blend, Deputy County Attorney, argued,
Great Falls, Montana
Thomas Mahan argued, Helena, Montana

Submitted: September 12, 1977

Decided: OCT 26 1977

Filed: OCT 26 1977

_____ Clerk

Mr. Chief Justice Paul G. Hatfield delivered the Opinion of the Court.

This is an appeal by the natural parents of three minor children from a judgment of the district court, Cascade County, the Honorable R. D. McPhillips presiding. Permanent custody of the children with the right to consent to adoption was awarded to the Department of Social & Rehabilitation Services (SRS) of the State of Montana.

The stipulation of facts presented to the district court on July 8, 1976, provides a summary of the case:

1. In July, 1974, while the father was stationed at Glasgow Air Force Base, Glasgow, Montana, a social worker was contacted in regard to the hospitalized mother.

2. On September 2, 1974, the mother gave birth to their third child. In late September and early October, the baby was treated by physicians in Glasgow and Great Falls for pyloric stenosis and hydrocephalism.

3. On October 18, 1974, the district court of the seventeenth judicial district, Judge Thomas Dignan presiding, found the two older children to be dependent and neglected and ordered the award of temporary custody to SRS, pending filing of a petition for permanent transfer of custody.

4. On October 28, 1974, SRS petitioned the district court for a declaration of dependency and neglect of the two older children and the award of permanent custody to SRS. The hearing on the petition was held on December 13, 1974. On the same day the judge issued an order stating: (a) that the father was to be transferred on January 6, 1975, to Malmstrom Air Force Base, Great Falls, Montana; (b) that the children were dependent and neglected and awarded custody to SRS until the father was transferred to Malmstrom; (c) that the parents obtain day care services for the children for at least six months; (d) that the parents obtain

counseling from the Mental Health Center or military facilities in Great Falls; and (e) that the parents cooperate with SRS in Cascade County in regard to the children's care, health and welfare.

5. On December 11, 1975, a Cascade County social worker petitioned the district court for custody of the three children and a declaration of dependency and neglect.

6. On January 26, 1976, a hearing was held on the petition. An order followed on January 29, 1976, stating: (a) that the father's duties prevented him from caring for and controlling the children; (b) that the mother had had a nervous breakdown and was unable to care for and control the children without strain upon her and them; (c) that the parents have shown deep love and affection for the children which the children reciprocated; (d) that the children are dependent and neglected and awarded custody to SRS until further hearing; (e) that the two older children are to be evaluated by a competent mental health professional; (f) that the parents obtain counseling; and (g) that SRS make recommendations of the means and ways by which the children could be returned to their parents and work with the parents to that end.

7. On April 7, 1976, the parents petitioned for the return of the children to their custody. On June 2, 1976, SRS petitioned for permanent custody and authority to assent to adoption of the children.

A hearing was held July 11, 1976, on the petition declaring the children youths in need of care. At that hearing five witnesses testified for the SRS and six witnesses testified for the parents. Based on the testimony at the hearing, and the stipulated facts, the district court issued findings of fact and conclusions of law on August 4, 1976. The district court concluded that the children were dependent and neglected children

- 3 -

and granted the petition awarding permanent custody, including the right to consent to adoption to SRS. From this judgment the parents appeal.

Two issues are raised on appeal:

1. Did the district court abuse its discretion when it granted SRS's petition for permanent custody and authority to consent to adoption?

2. Were the natural parents of the children denied their right to due process when their children were removed without a petition for custody being filed within 48 hours of such removal?

The attention of this Court is first focused on the district court order of December 13, 1974. Apparently, evidence existed to justify declaring the children dependent and neglected and to award custody to SRS. Custody of the children was returned to the parents on the condition that they comply with the order of December 13, 1974. Just one year later, a Cascade County social worker again petitioned the district court for custody of their children. Following extensive hearings, the district court, Cascade County, awarded permanent custody to SRS. The end result of the judicial proceedings finds two different district court judges declaring the children to be dependent and neglected. This Court is mindful that the primary duty of deciding the proper custody of children is the task of the district court. As a result, all reasonable presumptions as to the correctness of the determination by the district court will be made. Foss v. Leifer, ____ Mont.____, 550 P.2d 1309, 33 St.Rep. 528 (1976). Due to this presumption of correctness, the district court's findings will not be disturbed unless there is a mistake of law or a finding of fact not supported by credible evidence that would amount to a clear abuse of discretion. Solie v. Solie, ____Mont.____, 561 P.2d 443, 34 St.Rep. 142 (1977).

- 4 -

The parents did not dispute the 1974 findings, nor the prerequisites required of them to regain custody of their children. The record shows that the parents were either unable, or unwilling, to comply with the 1974 court order. While the parents were ordered to obtain mental counseling, the records reveal that the mother received no counseling and that the father attended only one counseling session at Malmstrom Air Force Base. Counsel for the parents argues that the parents were not financially able to obtain counseling. No evidence is found demonstrating the parents' efforts to obtain assistance or reduced counseling rates due to their financial status. The parents' unwillingness to obtain counseling was again repeated following the court order of January 29, 1976. This order, for the second time, required the parents to obtain counseling. The record gives testimony of four mental health professionals. Dr. Jones, a clinical psychologist, testified that the father was resentful and defiant. While being tested, he voiced distaste for having to undertake the tests. The mother cancelled her appointment either because she could not or would not come to see the doctor. At a later date, Dr. Jones had to fit the mother into his schedule. The father was able to bring the mother in at that time on account of her being in the right frame of mind.

Dr. Haire, a clinical psychologist, testified that the father was not tested because he was so bitter. The doctor could not test without absolutely insisting, and this he did not want to do. The mother was not seen by Dr. Haire since she refused to come in.

Mr. Hiber, a mental health professional, reported doing a court ordered evaluation of both parents. While the parents expressed interest in continuing treatment with Mr. Hiber, they did not embark on a counseling program following Mr. Hiber's report. Mr. Hiber was also unaware of any participation by the

parents in any ongoing treatment program. The fourth mental health professional, Dr. Shubat, did not interview nor test the parents.

The 1974 order required the parents to cooperate with SRS in Cascade County. Testimony of a Cascade County social worker reveals that the parents placed their children in a day care center as required. The father frequently visited the SRS office to discuss the situation. The mother also came at times, but during discussion of what was expected of the parents, she walked out. The parents were given information and telephone numbers of the mental health clinic. No efforts to obtain counseling were known by SRS. During a hearing in July, 1976, testimony was given that the father had become violent in the SRS office. The father did not physically injure anyone, but he did threaten to do so and slammed chairs against the wall.

No purpose would be served by a further extended discussion of the evidence before this Court. In 1974 the district court placed a burden on the parents to comply with the court order to regain custody of their children. The parents failed to show that they complied. On August 4, 1976, the district court, after hearing oral testimony and considering medical reports, made as a finding of fact that the parents had emotional problems requiring professional assistance and though ordered to obtain assistance, they had failed to acquire such help. The parents had the burden to show that the district court's finding in 1976 was not supported by credible evidence and amounted to a clear abuse of discretion. This was not done. Two times the parents were ordered to obtain mental counseling, but nowhere is there evidence that any counseling was obtained nor any ongoing program taken.

This Court will not hold the children hostage for the

good behavior of the parents. The parents were ordered to obtain help but refused to seek this help, even after 21 months of proceedings before the courts. The parents were ordered twice to comply, but finally in August, 1976, the district court ruled that time had run out and it would not be in the children's best interest to allow the parents to continue to raise them.

The children's rights also merit consideration by this Court. The children were adjudged dependent and neglected twice. This finding is the jurisdictional prerequisite for any court ordered transfer of custody. In the Matter of Declaring Heather Marie Fish a Dependent and Neglected Child, ____Mont.____, ____ P.2d____, 34 St.Rep. 1080 (1977). Once there is a showing of dependency or abuse or neglect by the natural parents as defined by section 10-1301, R.C.M. 1947, the "best interests of the child" test is the appropriate basis for determining custody. In re Guardianship of Doney, ____Mont.____, ____P.2d____, 34 St.Rep. ____(No. 13813, filed October 14, 1977); Henderson v. Henderson, ____Mont.____, ____P.2d____, 34 St.Rep. 942 (1977).

The entire thrust of the child psychologist testimony was that the children were mentally disabled. Disagreement existed as to whether the mental deficiencies were caused by organic, genetic problems or the environment the children were being raised in. Nevertheless, the record is clear that the children needed help. Dr. Shubat so states:

> " * * * both children are children that are in
> need of special education. They are also in
> need of special help now, today, emotionally
> and educationally."

Section 10-1300(1), R.C.M. 1947, states that the declared policy of Montana is:

> "(1) to ensure that all youth are afforded an
> adequate physical and emotional environment to
> promote normal development."

Abuse or neglect is defined in section 10-1301(2), R.C.M. 1947, as:

- 7 -

"(2) 'Abuse' or 'neglect' means:

"(a) The commission or omission of any act or acts which materially affect the normal physical or emotional development of a youth, any excessive physical injury, sexual assault or failure to thrive, taking into account the age and medical history of the youth, shall be presumptive of 'material affect' and nonaccidental; or

"(b) The commission or omission of any act or acts by any person in the status of parent, guardian or custodian who thereby and by reason of physical or mental incapacity or other cause, refuses, or with state and private aid and assistance is unable to discharge the duties and responsibilities for proper and necessary subsistence, education, medical or any other care necessary for his physical, moral and emotional well-being."

Children have the right under the "best interest test" to receive normal physical and emotional development. By looking at the totality of the circumstances the court may determine what is the child's "best interest".

In the case at hand the parents are not capable of providing for the special needs of their children. The parents failed to demonstrate their desire or ability to seek help. Their children are shown to need special help for normal physical and emotional development. This Court has been called on before to decide what is the "best interest" for the children where the natural parents are involved. In In re Declaring Olson Dependent, 164 Mont. 431, 434, 524 P.2d 779 (1974), this Court in quoting from In re Bad Yellow Hair, 162 Mont. 107, 509 P.2d 9 (1973) stated:

"' * * * The children's best interest and welfare, not that of the natural mother, is the paramount consideration [citing cases]. We are mindful that ordinarily a child's interests and welfare will best be served by retaining custody in the natural parents. However, the circumstances of the individual case may require a different result.'"

See also: In the Matter of Burgdorf & Berry, ____Mont.____, 551 P.2d 656, 33 St.Rep. 605 (1976); Foss v. Leifer, ____Mont.____, 550 P.2d 1309, 33 St.Rep. 528 (1976).

There is ample evidence to warrant the removal of these children from their parents. The district court correctly followed the dictates of the Montana statute. As this Court stated before in Olson, 164 Mont. at 435:

> " * * * It may be that it would be to the best interests of the mother for her to retain these children, but certainly, based upon the evidence presented, it would not be in the best interests of the children. This Court has repeatedly pointed out--the primary consideration is the best interests of the children."

Issue number two has no merit due to the particular facts of this case. The parents did not object to the late filing of the petition under section 10-1309, R.C.M. 1947, until several hearings and approximately six months later. The parents were no strangers to court proceedings and workings of SRS as a result of the prior child custody hearing. The district court was in the best position to weigh the evidence of the parents as to the prejudicial effect of filing the petition ten days late. Bauer v. Chaussee, ____Mont.____, 567 P.2d 448, 34 St.Rep. 778 (1977); Olson v. Westfork Properties, Inc., ____Mont.____, 557 P.2d 821, 33 St. Rep. 1133 (1976).

While issue two is not a controlling issue, this Court strongly condemns the negligent disregard of section 10-1309 by the SRS and county attorney. By statute, a petition shall be filed within 48 hours following the emergency removal and placing of a youth in a protective facility. SRS failed to comply in this case. SRS was acting under the guise of the law when it removed the children. SRS therefore has a duty to strictly adhere to the requirements of that same law. Removal of children from their parents is an area too sensitive to allow any abuse or noncompliance of the law.

The extensive publicity given this case has brought another serious matter to the attention of this Court. The names

- 9 -

of the parties in this action have been purposely deleted. This Court directs that in this and in future cases under section 10-1300 et. seq., all names of parties involved shall be removed to avoid publicity of the minor parties involved, in both the district and Supreme Courts.

_____
                    Chief Justice

We concur:

_____

_____

_____

_____
Justices