No. 80-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN THE MATTER OF
J. L. F. and H. A. F.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Peterson Law Offices, Billings, Montana

For Respondent:

Harold Hanser, County Attorney, Billings, Montana
Olsen, Christensen & Gannett, Billings, Montana

Submitted on Briefs: February 25, 1981

Decided: APR 6 - 1981

Filed: APR 6 - 1981

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal arises from a custodial hearing held in the Yellowstone County District Court, the Honorable Diane G. Barz presiding. The case was tried on the petition of the State Department of Social and Rehabilitation Services (SRS) to have JLF and HAF declared youths in need of care and to have their permanent care, custody and control awarded to the State of Montana with authority to consent to their adoption. The natural mother was present at the hearing and represented by counsel. The putative father of JLF predeceased the hearing, and the putative father of HAF was served with legal notice of the proceeding but failed to appear. Following the hearing on the petition, the District Court granted the relief requested by SRS and entered judgment accordingly. The natural mother now appeals.

JLF, a boy, was born on January 7, 1974. At that time, his mother, the appellant, was sixteen years of age, unmarried and living with her mother. JLF and appellant remained in her mother's house for approximately six months before moving into their own apartment. Appellant's independent living arrangement, however, was only temporary, and she soon moved back with her mother. This pattern continued for the next few years--appellant moving in and out of her mother's house, changing her residence on numerous occasions. During this period, appellant often called upon her mother to provide babysitting services, in addition to placing JLF with her for extended periods of time.

In May 1977 appellant suffered a nervous breakdown and was admitted to the psychiatric ward of the Deaconess

Hospital in Billings, Montana. Appellant was hospitalized for six weeks after which she was released to a local mental health group home for eight additional weeks. As a result of the breakdown, a verbal agreement was reached with SRS whereby appellant allowed JLF to stay with his maternal grandmother until it was determined that appellant could adequately provide for his care.

Appellant was rehospitalized due to her mental health in October 1977 and again in November 1978; thus, JLF continued to remain primarily in the care of his grandmother. Appellant was again hospitalized for mental health reasons in August 1979, after becoming pregnant with the infant HAF.

HAF was born February 5, 1980. Because SRS was concerned over appellant's ability to care for a newborn baby, temporary investigative authority was applied for and granted on February 6, 1980. The infant HAF was placed in a foster home upon her release from the hospital.

JLF, now six years of age, continued to reside with his grandmother. In March 1980, however, appellant demanded that he be returned to her custody. Not having any type of legal custody or control at the time, the SRS caseworker returned JLF to his mother's home on a supervised basis.

In April 1980 SRS filed the petition to have JLF and HAF declared youths in need of care. A hearing on the petition was held in July 1980. During this time JLF remained under the care of appellant on a continued supervised basis. The petition was eventually granted, and judgment was entered on September 24, 1980, awarding the permanent care, custody and control of the children to the

State of Montana.

The sole issue presented on appeal is whether the District Court abused its discretion by terminating the parental rights of appellant and awarding the permanent care, custody and control of JLF and HAF to the Department of Social and Rehabilitation Services.

This Court has held that the burden of proof in a termination of parental rights action is upon the State to prove by clear and convincing evidence that the children at issue are abused or neglected. See Matter of JLB (1979), _____ Mont. _____, 594 P.2d 1127, 36 St.Rep. 896. This Court, however, has also stated that the primary duty of deciding the proper custody of a child rests with the District Court. All reasonable presumptions concerning the correctness of that court's determination will be made, and the decision will not be disturbed on appeal unless it is shown that the District Court clearly abused its discretion. Matter of LFG (1979), _____ Mont. _____, 598 P.2d 1125, 36 St.Rep. 1547; In re Gore (1977), 174 Mont. 321, 570 P.2d 1110.

Here, the District Court found that JLF and HAF were youths in need of care and terminated the parental rights of appellant. The District Court based this determination on a finding that the children were neglected and abused.

In support of the District Court's findings, considerable evidence was presented, including the following:

Dr. Marian F. Martin, a clinical psychologist who has been treating JLF, testified that when the child was placed in the custody of appellant in March 1980 he began to show signs of emotional deterioration. Dr. Martin observed that

a past problem with encopresis had increased and that JLF had become fidgety, distractible, sullen and withdrawn. She also observed that JLF was not kept clean and had a strong odor due to the encopresis. Dr. Martin, although she had limited contact with appellant, further testified that since appellant was failing to provide for the emotional and physical needs of JLF, she would also be unable to meet the needs of her newborn baby, HAF.

Dr. Ned Tranel, a clinical psychologist who held three different sessions with appellant between January 1980 and February 1980, testified that appellant was diagnosed as a pseudo neurotic schizophrenic and that, although her condition may eventually stabilize, it was not likely that any improvements could be made. Dr. Tranel was also of the opinion that appellant was suffering from minimal brain disfunction due to drug abuses and, as a result of her overall condition, she would not be able to accurately comprehend or respond to the needs of her children.

It should be noted that appellant attacks the credibility of Dr. Tranel by pointing out that in February 1980 he indicated that appellant might be capable of raising one, but not both, of her children. Dr. Tranel testified, however, that he was merely speculating about the possibility of appellant raising both children and that at the time he still had considerable misgivings about her ability to raise even one child, although it was worth a try.

Alice Nickoloff, the county social worker assigned to work with the family, concurred with Dr. Martin's observations of JLF's deterioration. Nickoloff also

attested to appellant's inability to provide for the physical and emotional needs of her children. In particular, she noted a disinterest by appellant in getting out of bed to prepare JLF's meals, to clean him or to get him off to school. She was also of the opinion, although not recalling any specific incident bad enough to remove the child on the spot, that JLF was being neglected, if not abused.

The children's maternal grandmother testified that she had observed appellant engage in physically abusive behavior towards JLF on several different occasions. Examples of such behavior included the excessive striking of the child with a belt and a board, as well as pulling his hair and biting him as methods of imposing discipline. The grandmother further testified that appellant failed to properly feed, clothe and supervise the child.

Section 41-3-102, MCA, defines abused or neglected as follows:

> "(2) An 'abused or neglected child' means a child whose normal physical or mental health or welfare is harmed or threatened with harm by the acts or omissions of his parent or other person responsible for his welfare.

> "(3) 'Harm to a child's health or welfare' means the harm that occurs whenever the parent or other person responsible for the child's welfare:

> "(a) inflicts or allows to be inflicted upon the child physical or mental injury, including injuries sustained as a result of excessive corporal punishment;

> "(b) . . .

> "(c) causes failure to thrive or otherwise fails to supply the child with adequate food or fails to supply clothing, shelter, education, or health care, though financially able to do so or offered financial or other reasonable means to do so;

".  .  .

"(8) 'Mental injury' means an identifiable
and substantial impairment of the child's
intellectual or psychological functioning."

Based upon examination of the offered evidence, in relation to the declared policy of this State to promote normal childhood development and to provide for the protection of children whose health and welfare are, or may be, adversely affected by the conduct of those responsible for their care, the District Court found JLF and HAF abused or neglected as those terms are defined above. Upon reviewing the record, this Court now finds there is substantial credible evidence to support the District Court's conclusion, and, thus, a clear abuse of discretion has not been established.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

-7-