No. 81-472

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

_____

IN THE MATTER OF M.M.,

Youth in Need of Care.

_____

Appeal from:  District Court of the Fourth Judicial District,
              In and  for the County of Missoula, The Honorable
              John S. Henson, Judge presiding.

Counsel of Record:

    For Appellant:

        Ann C. German, U of M School of Law, Missoula,
        Montana

    For Petitioner/Respondent, State:

        Robert L. Deschamps, III, County Attorney, Missoula,
        Montana
        Russell E. Cater, Dept. of S.R.S, Helena, Montana
        Terry A. Wallace, Missoula, Montana (For R. M.)

    For Guardian Ad Litem:

        John Riddiough, Missoula, Montana

                          _____

                    Submitted on Briefs:  April 8, 1982

                              Decided:  September 9, 1982

Filed:  SEP - 9 1982

_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Following a series of hearings in a child abuse and neglect proceeding, the District Court of Missoula County determined that M.M. was a youth in need of care and awarded her father permanent custody with specified visitation rights granted her mother. The mother appeals. We affirm.

M.M. is the only child of the marriage. She was sixteen-months-old at the time of the District Court's order from which this appeal is taken. Following the birth of M.M. a stressful marital situation for the mother developed caused primarily by the couple's deteriorating financial situation and their inability to communicate effectively with one another. As a result, the mother began to take out her irritation on M.M. by yelling and screaming at her, shaking her crib and walker, and slapping her. The father did not say or do anything to ease the situation.

On August 29, 1980, the mother went to the Department of Social and Rehabilitation Services in Missoula to seek help in caring for the infant. M.M. was placed in foster care with the consent of her mother and father. The mother was placed in a counseling program at the Western Montana Regional Community Health Center. On September 8, 1980, the Missoula County attorney filed a petition for temporary investigative authority and protective services. The District Court granted the petition and appointed a guardian ad litem for M.M.

Shortly thereafter the parents separated and eventually divorce proceedings were filed.

The mother continued the counseling program for approximately six months and periodic reports were made to

the court by a social worker and two clinical psychologists. In the meantime, both the mother and father filed motions to dismiss the state's temporary investigative authority because a custody hearing was pending in the collateral divorce proceedings. On March 6, 1981, the parents, the guardian ad litem, the Department of Social and Rehabilitation Services and the attorneys for all parties stipulated in writing that the motions of the parents for temporary custody of M.M. and dismissal of the petitions for temporary investigative authority were withdrawn, that M.M. was a youth in need of care, that M.M. would remain in foster care pending the dispositional hearing, and that a dispositional hearing would be held on March 31, 1981.

On March 31 the hearing commenced and four witnesses testified: Linda Walrath, a social worker for SRS; Dr. Dean Biesemeyer, a clinical psychologist; Dr. H. A. Walters, a clinical psychologist; and Diane Haddon, a psychiatric social worker.

Diane Haddon testified in substance that during some eighteen sessions of counseling the mother had gained significantly in her ability to respond to M.M.'s needs, had become more confident and relaxed with M.M. and in her mothering abilities, and had increased her ability to handle stress to the point where the witness no longer saw a risk of abusive behavior by the mother toward M.M.

Dr. Biesemeyer stated that in his opinion the mother had made progress in handling her personal problems but had not resolved them. He testified that the mother's problems were emotional upset and turmoil that gets out of control under stress to the point where she can no longer be respon-

sible to the child. Dr. Biesemeyer testified in substance that if M.M. were placed in the mother's custody, the mother would require a strong supportive home environment with her parents or stepparents, attendance at parenting classes, monitoring by SRS, and continuing psychotherapy. He stated that among other things, the mother's problems are related to a family history of abuse.

Dr. Biesemeyer testified that the father's problems involved an apparent inability to meet the emotional and aesthetic needs of M.M., a passive attitude in his relationship to the mother, and perhaps a low IQ.

Dr. Walters' testimony and opinions concerning the mother paralleled those of Dr. Biesemeyer. He did not conduct an examination or evaluation of the father.

Linda Walrath testified that the mother demonstrated appropriate behavior toward M.M. during her home visits and that both parents cared for M.M. and used appropriate discipline toward M.M. She recommended that the mother receive custody of M.M. and that the father receive liberal visitation rights. The basis of this recommendation was that the mother recognized her problem, sought help at the risk of losing the child, participated in the counseling sessions and tried to implement the recommendations in order to become a better mother, while the father failed to recognize that a problem existed and remained passive.

The hearing was continued on April 15. At that time the court heard testimony from the mother, her mother, and social workers Miriam Morgan and Diane Haddon. The hearing was again continued to July 13.

In the meantime the visitation schedule of each of the

parents with M.M. was modified, foster care was eliminated in favor of M.M. staying alternately with each parent for four-day periods under SRS supervision, and the social worker assigned to the case was changed from Linda Walrath to Carol LaCasse.

At the hearing on July 13, the following persons testified: the mother and her stepfather, the father and his mother, social workers Linda Walrath and Carol LaCasse, and Cassandra Kay Schmill, a neighbor.

Carol LaCasse conducted home visits with the mother and M.M. on June 26, July 2 and July 9. She testified that on the first visit things went quite well. On the second visit, the mother exhibited a lot of physical discipline toward M.M., slapping her hands six to eight times, spanking her, threatening her with the back of her hand, rolling up a newspaper and hitting her hands, getting into a power struggle with M.M., and exercising inconsistent discipline. This caused M.M. to flinch before the discipline.

LaCasse testified that the mother was the only parent with any potential for abusing M.M. and that the father exhibited proper behavior toward M.M., offering her stimulation, guidance and appropriate discipline. She did not believe the father had any potential for abusing M.M. She recommended that custody be awarded the father since he was the better parent.

Linda Walrath, the social worker who had recommended that custody be given to the mother at the March 31 hearing, testified that she would change her prior recommendation if the mother lost her support system or behaved inappropriately toward M.M.

The father's neighbor for several years, Cassandra Kay Schmill, testified that the father had done babysitting for her for six years since her children were infants. She had observed him being affectionate and providing guidance, discipline and stimulation to them.

On July 20 the District Court entered extensive findings of fact, conclusions of law and an order. It granted permanent custody of M.M. to the father, ordered the father to enroll in a parent skills training program and counseling as deemed necessary by SRS, provided that SRS would retain investigative authority over M.M. with progress reports to the court every six months, retained continuing jurisdiction in the court, provided that any custody order in the divorce proceedings would not be inconsistent with its order in this proceeding, provided a detailed visitation schedule for the mother, and provided for modification by agreement of the parties. The mother appeals.

The mother assigns the following issue for review on appeal: Did the District Court abuse its discretion in denying her custody of M.M. in violation of section 41-3-101, MCA? She contends that the findings of fact, conclusions of law and order of the District Court are not supported by substantial evidence and that the best interests of M.M. require custody be awarded to her.

The guardian ad litem, the father and SRS have filed briefs supporting the findings of fact, conclusions of law and order of the District Court.

The statute relied upon by the mother provides in pertinent part:

> "(2) It is the policy of this state to provide for the protection of children

whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for their care and protection. It is intended that the mandatory reporting of such cases by professional people and other community members to the appropriate authority will cause the protective services of the state to seek to prevent further abuses, protect and enhance the welfare of these children, and preserve family life wherever appropriate." Section 41-3-101(2), MCA.

The mother argues (1) that the state failed to make out a prima facie case, (2) that there was simply not sufficient credible evidence to support the custody award to the child's father, and (3) that the weight of the evidence supports a custody award to her.

We hold the District Court did not abuse its discretion and its findings, conclusions and order are supported by substantial evidence. The test for abuse of judicial discretion is whether the court acted arbitrarily without the employment of conscientious judgment or exceeded the bounds of reason. Marriage of Berthiame (1977), 173 Mont. 421, 425, 567 P.2d 1388, 1390. The District Court's order awarding custody of children is clothed with the presumption of correctness. In re Gore (1977), 174 Mont. 321, 325, 570 P.2d 1110, 1112, citing Foss v. Leifer (1976), 170 Mont. 97, 550 P.2d 1309. It is only where the District Court's findings of fact are not supported by substantial evidence or a mistake of law exists that we will find an abuse of discretion and disturb the District Court's decision. In re Gore, supra; In the Matter of L.F.G. (1979), ____ Mont. ___, 598 P.2d 1125, 1128, 36 St.Rep. 1547, 1550; Matter of C.M.S. (1979), ____ Mont. ___, 609 P.2d 240, 243, 36 St.Rep. 2004, 2008. The appellant, here the mother, has the burden of

proving an abuse of discretion. In Re Gore, 174 Mont. at 326, 570 P.2d at 1113.

The uncontradicted evidence shows that the parents relinquished custody of the child to SRS at the outset because the mother was venting her frustrations on the child by screaming at her, shaking her crib and walker, and slapping her. She feared she would further abuse the child and needed help to relieve her stress and prevent further mistreatment. Both she and the father stipulated in writing that M.M. was a youth in need of care. On July 2, 1980, further mistreatment of the child by the mother occurred. By that time the child had developed a flinching reflex to the mother's discipline. This constitutes substantial evidence that M.M. was a youth in need of care as the District Court found.

The cases cited by appellant for the proposition that the mother's potential for abuse of the child should not be the basis for depriving her of custody are not in point. Estell v. Estell (1975), 167 Mont. 247, 537 P.2d 1082, involved a situation where custody was originally awarded to the paternal grandmother because neither parent could provide adequate care for the children. When conditions changed, custody was awarded the mother. Here conditions did not change sufficiently to award custody to the mother. Sinclair v. Sinclair (Okla. 1964), 392 P.2d 750, and Tingen v. Tingen (1968), 251 Ore. 458, 446 P.2d 185, simply hold that recovery from a mental illness may entitle a parent to regain custody and are so factually dissimilar from the present case as to be inapposite.

Substantial evidence supports the District Court's

finding of a continuing potential for abuse by the mother. The evidence shows continuing stress in handling parental responsibilities, lack of a support system after her mother and stepfather moved out of the state, and a family history of abuse. After SRS efforts to help her with her problems for some ten months, she still exhibited a tendency to abuse M.M. The uncontradicted evidence shows no potential for abuse in the father and no history of abuse in his family.

In sum, all that appellant has done is argue and quote some testimony that would support an award of M.M.'s custody to her. This is insufficient to establish an abuse of discretion by the District Court in its findings.

We further hold that the District Court made no error of law. The mother argues that the District Court should have dismissed this proceeding and determined custody in the collateral divorce proceedings. Not so. "Where a child has allegedly been abused or neglected by his natural parent, the state has a clear duty to protect the child by means of a judicial hearing to determine whether the child is in fact abused or neglected." In the Matter of Doney (1977), 174 Mont. 282, 285, 570 P.2d 575, 577. Once that determination has been made, as it has in this case, the court proceeds to a dispositional hearing to determine custody of the child. Section 41-3-406, MCA.

The remaining contentions of the mother involve the sufficiency of the evidence to support the award of custody to the father rather than her. The standard to be applied in determining custody is the best interest of the child. In re Gore, 174 Mont. at 329, 570 P.2d at 1114; Matter of Fish (1977), 174 Mont. 201, 206, 569 P.2d 924, 927. The

District Court in its findings recognized a potential for future child abuse in the mother, found no such potential in the father, and determined that it was in the child's best interest to award custody to the father. This conforms to the policy of the state "to provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for their care and protection." Section 41-3-101(2), MCA.

The testimony of Carol LaCasse, Dr. Biesemeyer, and Dr. Walters previously summarized in this opinion constitutes substantial evidence supporting the findings, conclusions and order awarding custody to the father. Given the alternative of awarding the custody to the mother whose behavior had adversely affected the child and who posed a threat of continued abuse vis-a-vis a more stable nonabusive father, the court awarded custody to the latter. In so doing, the District Court did not abuse its discretion.

We have examined all the nuances and variations of the mother's contentions including the authorities cited in her brief and find them to be without merit.

Affirmed.

_____
Chief Justice

We concur:

_____

_____
Justices

-10-